The following opinion was delivered at special term:
Lawrence, J.
When the testimony on the part of the plaintiff *854 was closed, and the motion was made to dismiss the complaint, or to have it determined in the alternative, whether the plaintiffs have a general or specific lien upon the goods involved in this controversy, it was held that the plaintiffs have a general lien and are entitled, to payment of the moneys due them, out of the balance in the receiver’s hands. The cases which, in the opinion of the court, justified the determination then made were the Farmers' & Mechanics' Bank of Buffalo v. Logan, 74 N. Y., 568; The Same v. Atkinson, 74 id., 587; The Same v. Hazeltine, 78 id., 104.
In the first of the cases cited it was held that where commercial correspondents, on'the order-of a principal, make a purchase of property ultimately for him, but on their own credit, or with their own funds, and such course is contemplated when the order is given, they may retain title in themselves until they are reimbursed; that this may be done by taking the bill of sale in their own name, and when the property is shipped taking from the carrier a bill of lading in such terms as to show that they retain the power of control and disposition of it It was further held that the bill of lading in such a case confers upon the person in whose favor it is issued, or to whom it is transferred, the title to the goods, and this although the transaction is not intended to give the permanent ownership, but to furnish security for advances of money or discount of commercial paper made upon the faith of it. And it was further held that third persons dealing with property thus shipped, though acting in good faith, in the regular course of business, and paying value, are affected by and chargeable with constructive notice of the contents of the bill of lading. The same doctrine was also laid down in the case secondly cited, and in the third case, The Farmers' & Mechanics' Nat. Bank v. Hazletine, it appeared that the correspondents and agents at Buffalo of one Brown of Hew York, in order to fill an* order from him, purchased, in their own name, a boat load of wheat, which was delivered on board a canal boat, and not being furnished by Brown with money or credit wherewith to make purchases, had in accordance with their understanding and course of business raised the funds by procuring plaintiff to discount a draft drawn by them on Brown, on delivery as collateral of a bill of lading of the wheat, wherein it was stated that the wheat was shipped to Hew-York, to account and order of the plaintiff, and that the plaintiff on acceptance of the draft delivered the bill of lading to Brown, with an endorsement thereon to the effect that the wheat was pledged'to it for the payment of the draft and was placed in Brown’s custody in trust for that purpose, and not to-be diverted to any other purpose until the draft was paid. On its arrival the wheat was delivered by the carrier, on the order of-Brown, to the defendants, who were warehousemen, in store. Brown, thereupon, sold the wheat to A., to whom the defendants made advances thereon to pay therefor, and subsequently delivered the wheat to him on Brown’s order. Before such advances and delivery, it appeared that the defendants had seen a copy of the bill of lading and of the endorsement thereon.
The plaintiffs having brought an action against the defendants *855 for a conversion of the wheat, it was held that such delivery of the "bill of lading did not vest in Brown a title to the wheat, or confer upon him any authority to sell, but simply vested him with the possession to hold in trust for plaintiff, and that the plaintiff’s title could not be divested by any act of Brown until payment of his acceptance, and that, therefore, the defendants were liable. And in the very recent case of Moors v. Kidder and others, 12 N. E. Rep., 818; 8 N. Y. State Rep., 877, the court of appeals stated the doctrine laid down in the Farmers’ & Mechanics' Nat. Bk., supra, as follows : “ The doctrine stated was, in substance, that where a commercial correspondent, however set in motion by a principal for whom he acts, advances his own money or credit for the purchase of property, takes a bill of lading in his own name, looking to such property as the reliable and safe means of Teimbursement up to the moment when the original principal shall pay the purchase price, he becomes the owner of the property instead of its pledgee, and his relation to the original mover in the transaction is that of an owner under a contract to sell and deliver when the purchase price is paid.” Such being the law as declared "by the court of last resort, I see no reason, notwithstanding the proof which has been offered since the motion above referred to was decided, for changing the views then expressed, or for denying that the plaintiffs in this action were entitled to a general lien upon the property in the hands of the receiver for the amount due to them from Pease at the time of his failure. By the terms of the letter of credit procured from the plaintiffs by Pease, the defendant, St. Amant, was authorized to value, on Drexel, Harjes & Do., of Paris, at three months sight, for any sum or sums not exceeding in the one case 100,000 francs, and in the other 30,000. The letter of credit specified that the drafts were to be drawn in Prance, within eight months from date, “ for the cost of merchandise to be exported to an Atlantic port in the United States, and advice thereof to be given to Messrs. Drexel, Harjes & Co., the advice to be accompanied by an abstract of invoices and bills of lading to our (i. e., Drexel, Morgan & Co.’s) order and all remaining bills of lading with certified invoices and consul’s certificates to be sent to us direct by vessel.” In and by said letter of credit, the plaintiffs agreed with the drawers, endorsers and Iona fide holders of bills drawn under the terms of this credit, that the same should be duly honored by Drexel, Harjes & Co., in Paris. At the time of receiving said letters of credit from the plaintiffs Pease signed a letter addressed to the plaintiffs, by which, among other things, after stating that he had received from them a letter of credit, he agreed to give the plaintiffs a specific claim and lien on all goods and merchandise and the proceeds thereof. “ for which you may have paid or come under any engagement under this credit, etc., on such goods or merchandise to an amount sufficient to cover your advances under this credit, and on all bills of lading given for same with full power and authority to take possession and dispose of same at discretion, and I undertake to re-intrust to your order all said bills of lading if you so desire, and I further pledge to you as security for any other indebtedness of my firm *856 to you any surplus that may remain either in the goods or the proceeds thereof, after, providing for the acceptances under this credit.”
Under the case above cited there is no doubt that Drexel, Morgan & Co. were the owners of the property shipped by StAmant to Pease until the advances made by them under the letters of credit were paid, but it is claimed by the defendants that their right to retain possession of said goods or to dispose of the same ceased after the payment of the forty per cent, advanced on the bill of goods and of fifty per cent, on the Le Marchand and other goods. I am of the opinion that the qualified ownership of the plaintiffs did not cease until they had been reimbursed according to the terms of the contract entered into between them and Pease at the time the letters of credit were issued-As we have seen, by the terms of that contract, the goods on which the advances were made by the plaintiffs to Pease and St. Amant were pledged not only as security for such advances, but that the surplus of - said goods or the proceeds thereof were pledged for any other indebtedness “of my firm to you.” This provision was as much a part of the contract between Pease and the plaintiffs as the provision in respect to advances on the goods themselves. It was one of the conditions on which the letters of credit were secured, and St. Amant, it seems to me, is estopped from denying that Pease had authority to make such arrangement with the plaintiffs. Entertaining these views, and being satisfied from the evidence that there was an indebtedness to the plaintiffs at the time of Pease’s failure of $10,845.82, upon-which is to be credited the proceeds of six hundred cases of sardines, amounting to $6,548.28, leaving a balance of $4,297.54 due to the plaintiffs I ana of the opinion that the plaintiffs are entitled to be paid that sum out of the goods or proceeds in the receiver’s hands, unless there is something in the so-called trust receipts executed by Pease at the time he received the bills of lading from the plaintiffs, which alters the plaintiffs’ rights. By these trust receipts Pease, after describing the bill of lading received, declares that “I hold and hereby agree to hold in storage as their property,, with liberty to sell the same for their account, the proceeds when received to be by them applied to the payment of the bills of exchange, drawn for the purchase of said goods, and under such sale to keep said property insured, etc., * * with the understanding that they are not to be chargeable with any expenses incurred thereon; the intention of the undersigned in giving this trust receipt being to protect and preserve unimpaired the title, right and interests of Messrs. Drexel, Harjes & Co. and Messrs. Drexel, Morgan & Co. in said property, and to act in the premises entirely as their trustee.” In the case of Moors v. Kidder, 12 Northeastern, 818; 8 N. Y. State Rep., 877, above referred to, a somewhat similar receipt was executed by the party who would have been the ultimate owner of the goods upon payment to Kidder, Peabody & Co., the defendants, of the advances made by them upon obtaining the bills of lading from them, but the court held that the obtaining of the bills of lading by exe *857 outing such a receipt did not change the position of the parties towards each other, nor affect the title of the bankers, defendants, to the property.
It will be observed, too, upon examining the opinion rendered by the general term of this department, in deciding that case below, that it was held that in order to change the relation of the parties to each other, and to vest the title in one who might, upon payment of the advance, become the ultimate vendee, it must be shown that he had been entrusted by the true owner with the possession of the merchandise, or the bill of lading, for the purpose of sale, or as security for advance to be made or obtained thereon, and that it was not sufficient to show that he was entrusted with the possession of the goods, if he was entrusted with them only for the purpose of enabling him to have the merchandise stored for or in the name of the true owner. See the opinion of Daniels, J., 34 Hun, 538, 539, where the receipt given by Swain, •Upon procuring the bill of lading is set forth. Prom what has been said, I think it is established that the plaintiffs are entitled to be paid the aforesaid sum of $4,297.54, with interest thereon, from the date stated in the account submitted upon the trial, out ■of the money or goods in the hands of the receiver.
The next question to be determined is, as to the rights of the defendants, mechanics’ and city banks and St. Amant. I do not discover from the evidence that the character of the indebtedness of Pease to the banks has been proven. It appears that certain judgments were obtained by the banks against Pease, and that in those actions attachments and executions had been issued and levied, but the judgment-rolls are not before me. It is, however, assumed in the brief of St. Amant’s counsel, that the banks were only general creditors of Pease, and that there is no pretense that they are anything but individual creditors of Pease. That position, certainly, cannot be sustained as to the 107 cases of sardines upon which money was advanced, and, it seems to me, must be conceded in good faith by the defendant, the city bank.
Assuming that in all other respects the banks are simply individual creditors of Pease, they cannot hold the goods in question unless as between them and St. Amant the goods are to be regarded as the goods of Pease. But the defendants rely upon the position that, as between them and St. Amant, the latter is to be regarded as the plaintiff, and is bound to make out his case. And it is claimed that the course of business, as shown by the evidence, between St Amant and Pease, establishes the fact that Pease was the owner of the goods, and that St. Amant has failed to prove his title thereto. In support of this contention, the letter of March '21, 1883, is much relied upon by the defendants. In that letter, addressed by St. Amant to Pease, he says: “ I had an interview with the packer and owner of the Billet brand, and he is willing to give us the monopoly of these sardines, the agreement to be as follows: We to advance eighty per cent of cost of each invoice as they are forwarded from the factory; this advance to be halved by~you and I, and as a basis, we take the amounts of *858 1,000 and 100 American J, and 4,000 cases of 100 low J, to be handled during the season, we to have the liberty of stopping shipments and annulling the agreement at any time during the season, if we find it unprofitable, or have any other good reasons; interest to run on the account at six per cent, per annum. Yo-commission to be charged by us, nor profits to be added by him. You to charge the brokerage only when actually paid by you. Goods to be sold from wharf, unless some very good reason should exist for doing otherwise. Any loss occasioned by failure of your' buyers to be supported 'in thirds; one-third each, by you, the owner of the brand, and myself, the total of net proceeds of all the accounts sale, compared with the total cost, shall determine the profits of the season, which shall be divided in thirds in the same manner as stated in previous paragraph. If this should show a.loss, this- loss is borne by the packer.” St. Amant then-adds : “ In studying the foregoing you will see that we are entirely in your hands as to the result, and without my knowledge of your straightforwardness and business integrity for many years, I would never have suggested you to my friend here. I hope to-have your early answer, and I trust this will lead to something in a larger business way between us.”
Pease replies to this letter under date of April 7, 1883, and says: “ Your valued favor of the 21st inst. is at hand and contents carefully noted. The terms of the Billet contract are entirely satisfactory, and I shall do all in my power to protect and advance the interests of all concerned.”
Those two letters seem to have constituted the contract under which St. Amant and Pease did business in relation to the Billet goods in the year 1883. And it may well be claimed under the authorities that there was a partnership existing between Pease and St. Amant in relation to all goods shipped or consigned under it. See Eldridge v. Troost, 3 Abb. Pr., N. S., 20; Manhattan Brass & Man. Co. v. Sears, 45 N. Y., 797; Haas v. Roat, 26 Hun, 634, and cases cited.
It is impossible to determine, from the evidence presented, how far Pease had paid his share of the advances agreed to be made by him, pursuant to the arrangement entered into under the letter of March 21, 1883, and the other letters in evidence. The testimony of Riedel and La Manna as to any verbal alterations which may have been made in the arrangement between Pease and St. Amant is not so conclusive as to justify the inference that the business was conducted on any other basis than that specified in those letters. Assuming those letters to have constituted a partnership between St. Amant and Pease, or a joint venture between them, as to all goods shipped by St. Amant to Pease, it is clear, under the authorities, that the individual creditors of Pease are-not entitled to apply any portion of the partnership goods, or of the proceeds thereof, to the payment of his individual indebtedness, unless it should be determined, upon a full investigation of the partnership affairs, that some surplus would be coming toPease after payment of all partnership debts. The difficulty which I have encountered in the case is in determining precisely what *859 goods were shipped by St. Amant to Pease, of which the receiver-has taken possession.
Horace M Deming and- Emmet R. Olcott, for app’lts, banks and assignee; 0. J. Wells, for app’lt, St Amant; G. H. Tracy, for pl’ffs, resp’ts.
It does not appear from the evidence that Pease transacted business for no other person than St. Amant It does not appear that he had no other goods than those of St. Amant, at the time of his failure. Nor does it satisfactorily appear that the goods in the receiver’s hands are all of them St. Amant’s goods. Under these circumstances, I think a reference will be necessary in order to ascertain definitely, by proper proof, what particular portion of the goods was received by Pease from St. Amant, and after that to ascertain whether the indebtedness, for' which the banks have recovered judgment, was an individual indebtedness of Pease or whether it was for advances made upon account of the joint venture or partnership of St. Amant and Pease. If it was the former, it will also be necessary to ascertain whether Pease is entitled to any surplus upon the settlement of the partnership; if not, the banks have no claim. If the indebtedness was incurred to the banks on partnership account, then the banks have a claim to the extent of that indebtedness. On the trial certain testimony given by the witness Eiedel was taken subject to objection. I have determined to receive it and to allow to the objecting party the proper exception.
The deposition of Mr. Cohn, taken upon commission and referred to in the stenographer’s minutes, is not among the papers submitted.
Let an interlocutory judgment or decree be drawn in accordance with these views, and let the findings be settled upon five days’ notice.
Barrett, J.
Upon the main question presented by this appeal we concur in the conclusion arrived at by Mr. Justice Lawrence. The contract for a general lien, entered into between the plaintiffs and Pease, was of binding force. The plaintiffs issued their letter of credit upon the faith of this contract and their title to the goods was impressed therewith. When Pease applied to them for the letters of credit in favor of St. Amant they had no reason to doubt that Pease was the principal and that St. Amant was simply his correspondent and agent, and that the goods were to be purchased for Pease by St. Amant, the latter utilizing the letters of credit for such purpose. Even the contract between Pease and St. Amant, as embodied in the letter of March 21,1883, plainly gave Pease the title to the goods which were to be shipped thereunder and absolute power of disposition. If Pease had chosen to sell the goods as they arrived and to appropriate the proceeds to his own use, the only remedy of St. Amant, or of the original owner of the goods, would have been against Pease. They could not have followed the goods into the hands of a Iona fide purchaser.
Indeed, they simply contracted with Pease for an accounting at *860 the close of the season, and a division of the net profits of the season then in his hands. Clearly it was left in Pease’s power to deal with these goods as his own, and he could make a valid contract with the bankers for a general lien applicable to all his transactions. St. Amant was right in saying, as he did in his letter of March 21, 1883, that Pease would see from a study of this, letter, that the original owner was thereby left entirely in his, Pease’s, hands as to the result. We think the reasoning of Mr. Justice Lawrence, and the authorities cited by him, support his conclusions, and we deem it unnecessary to add anything further to his opinion on that head.
Our doubt has been with regard to the disposition of the case as between the co-defendants. After directing the payment by the receiver (out of the proceeds of the goods which had been entrusted to Pease) of the amount due to the plaintiffs, the learned judge directed the continuance of the action for the purpose of ascertaining certain facts necessary to its final determination as between the co-defendants. He then directed a reference to ascertain such facts, and reserved all other questions until the coming in of the report. Whether this practice was correct need not now be considered, for the reason that none of the parties question it.
The plaintiffs have nothing to do with this direction, and they simply ask an affirmance of the judgment in their favor. The defendant, St. Amant, appeals only from the judgment in the plaintiffs’ favor, and insists that the direction as to a reference is correct, and should be affirmed. The banks and the assignee alone appeal from this part of the judgment.
They do not, however, question the practice. They insist that they were entitled to a dismissal of St Amant’s claim upon the merits, that is, upon the pleadings and proofs as they stood; and their appeal raises that question, and that alone. We think that this latter question cannot properly be considered until a decision one way or the other has actually been made at special term. The reference was ordered for the purpose of aiding the court in making a final and complete disposition of the questions in dispute as between these co-defendants. Upon an appeal from the final judgment, the question of pleading, presented upon the present appeal, may be entirely eliminated from the case, for the court can at any time before the final hearing permit St. Amant’s answer to be amended.
At all events, the reversal of the direction as to a reference would not aid the banks and the assignee, for we could not thereupon direct a dismissal of St. Amant’s answer. The only effect of a reversal would be to require a decision by the special term (without a reference) of the questions now presented, or else to direct a new trial. We could not make the appropriate decision in the first instance. The question of the mere regularity of the-practice not having been raised, we deem it unnecessary to pursue this subject further. The provision in the judgment for the continuance of the action and for a reference is neither interlocutory nor final. It decides nothing. We might reverse this direction if on examination it were found to be unauthorized. But if we did *861 reverse it, we could not at the same time say what should have been decided. When the report comes in a decision must be made, either interlocutory or final, upon these issues, and then there will be something to review.
The proper disposition of this appeal is to affirm the judgment actually rendered in the plaintiff’s favor, except as to the extra allowance, which should be reduced to five per cent, upon the recovery; and to dismiss the appeal taken by the banks and the assignee, without costs.
Van Brunt, P. J., and Bartlett, J., concur.