[No. 20194.   In Bank. — May 22, 1886.]

IN THE MATTER OF JAMES GANNON ON HABEAS CORPUS.

GRAND JURY — COLLATERAL ATTACK ON VALIDITY — CONTEMPT. — The validity of a grand jury cannot be drawn in question in a proceeding of contempt to punish a person for refusing to testify before it.

ID. — JURISDICTION. — A grand jury is part of the court by which it is convened, and the court has jurisdiction to adjudge a witness who defies the authority of the grand jury, by refusing to testify before it, guilty of contempt, and to punish him therefor.

ID. — TERM OF SERVICE. — A grand jury legally constituted may continue to act until dissolved by operation of law or an order of court.

ID. — GRAND JURY OF 1885. — The grand jury organized on the 14th of July, 1885, in the city and county of San Francisco, was not dissolved by operation of law during or at the expiration of that year, and was a

valid body on the 26th of March, 1886, notwithstanding the names of grand jurors were selected and returned in January, 1886, for that year, from which a new grand jury might have been drawn. Section 241 of the Code of Civil Procedure prescribes no specific time for the drawing of the grand jury, or for its official existence. These matters have been left to the discretion of the court.

Id. — Terms of Court. — The constitution of 1879 abolished the system of terms and final adjournments under which judicial business was transacted by the former courts. The word "sessions," as used in sections 73 and 74 of the Code of Civil Procedure, means the time during which the court is in fact held at the place appointed and engaged in business; and the word "recesses" means the times in which the court is not actually engaged in business. There is no division of time into certain periods of the year known as terms of court at which a court may sit to hear and determine causes.

Application for writ of *habeas corpus*. The facts are sufficiently stated in the opinion of the court.

*Davis Louderback*, for Petitioner.

*Philip G. Galpin*, for Respondent.

McKee, J. — In the petition in this proceeding for *habeas corpus*, the petitioner alleges that he is illegally imprisoned by and under an unlawful judgment of conviction of contempt of court, rendered against him by the Superior Court of the city and county of San Francisco, from which he asks to be discharged.

The judgment was rendered upon facts about which there was no dispute.

Admittedly, the petitioner appeared on the 26th of March, 1886, before a body of men, sitting as a grand jury in department 11 of the Superior Court of said city and county, in obedience to a subpœna, regularly issued and served upon him, by which he was commanded to be and appear before the grand jury to testify to certain matters then under investigation. But while the petitioner appeared in obedience to the process of the court, he refused to be sworn as a witness or to testify; and for this act of contumacy he was, by regular proceedings taken against him in the Superior Court, adjudged

guilty of contempt of court, and punished by fine and imprisonment.

There is no doubt that a grand jury is part of the court by which it is convened, and that it is under the control of the court; and there is just as little doubt that a witness who appears before it is subject to the lawful authority and control of the court in the same manner and to the same extent as are witnesses before a trial jury. The court has, therefore, jurisdiction to deal with a witness who defies the authority of the grand jury, and to adjudge him guilty of contempt of court for such conduct, and punish him (Pen. Code, sec. 166; Code Civ. Proc., sec. 1209); and if no excess of jurisdiction appears in the proceedings, or which resulted in the conviction and punishment, the judgment rendered is final and conclusive, and not the subject of review. (Code Civ. Proc., sec. 1222.)

It is claimed, however, that the refusal of the petitioner to testify before the grand jury was not a contempt of court, because the so-called jury was not a legally constituted grand jury, and had no authority to require the petitioner to be sworn as a witness.

In *Levy* v. *Wilson, Judge, etc.,* 69 Cal. 105, we held that the same body was legally organized as a grand jury, in the Superior Court of the city and county of San Francisco, on the 14th of July, 1885; it was therefore a valid grand jury, and an appendage of the court in which it was organized.

That being the fact, the individual members of the jury must be deemed to be officers of the court in which they were regularly appointed, and qualified to exercise judicial functions in the investigation of offenses cognizable by the grand jury; and as officers of the court, they continue to act until the jury of which they are members shall be dissolved by operation of law or order of the court; until then neither their duties nor their offices end.

But it is contended that the grand jury was dissolved by operation of law in the year 1885, or at the expiration of that year, because the grand jurors were selected to serve for a term of the court which expired on the first Monday in October, 1885, or until the final adjournment of the court at the expiration of its July session in 1885, or until new lists of grand jurors were selected and returned for the year 1886, as provided by sections 204–211, Code of Civil Procedure.

The basis of the contention is, that the Superior Court, in which the jury was convened, works under a system of terms and final adjournments of the court, by which its jurisdiction as a court to transact business is temporarily suspended by the end of its term or by the final adjournment of the court; and until the reconvening of the court at the commencement of a new term, its authority to hear and determine causes ceases, and the authority of a jury in attendance upon the court ends also, and the body is dissolved by law. Such a system was, undoubtedly, part of the constitution of the courts which formerly existed in the state, before the adoption of the present constitution; and many of the provisions of the codes by which the system was established are still to be found upon the statute-books. But the constitution of 1879 abolished not only the former courts, but also the system of terms and final adjournments under which the judges thereof opened courts for the transaction of judicial business, and substituted Superior Courts, which it ordained should be " always open," legal holidays and non-judicial days excepted (Const., art. 6, sec. 5); and this command of the constitution was enforced by the legislative enactments of sections 73 and 74, Code of Civil Procedure.

"Sec. 73. The Superior Courts shall always be open (legal holidays and non-judicial days excepted), and they shall hold their sessions at the county seats of the several counties, or cities and counties, respectively. They shall hold regular sessions, commencing on the first Mondays

of January, April, July, and October, and special ses-
sions at such other times as may be prescribed by the
judge or judges thereof; *provided,* that in the city and
county of San Francisco the presiding judge shall pre-
scribe the times of holding such special sessions.

"Sec. 74. Adjournments from day to day, or from
time to time, are to be construed as recesses in the ses-
sions, and shall not prevent the court from sitting at any
time."

By the term "sessions" of the court, as used in these
sections of the code, is meant the time during which the
court is in fact holding court at the place appointed, and
engaged in business; and by the term "recesses" is
meant the times in which the court is not actually en-
gaged in business. There is therefore no such thing as
a division of time into certain periods of the year, known
as terms of court, during which a court may sit to hear
and determine causes. The Superior Court of each
county in the state is an organized judicial institution,
competent for the transaction of business at all times,
without reference to terms or adjournments. So that
notwithstanding an order for adjournment entered on
the minutes of the court, the court may sit and exercise
its jurisdiction in the trial of causes or in the transaction
of any legal business at any time (*Stewart* v. *Mahoney
M. Co.,* 54 Cal. 149); and it follows that neither an end
of the session of the court nor a final adjournment of
the court for the year would have the legal effect of dis-
solving the grand jury.

But it is further contended that the law requires two
grand juries to be drawn and impaneled in each year,
and as there was only one drawn and impaneled in 1885,.
it must have ceased to exist on or before the expiration.
of 1885.

The argument seems to be, that as the grand jury
which was drawn and impaneled in July, 1885, was
drawn from the grand-jury box which contained the

names of the regular jurors selected and returned for the year 1885, under an order made by the court in January, 1885, it had no official existence as a grand jury after the year 1885, because it was made by law the duty of the Superior Court, in the month of January of each year, to order the selection and return of a sufficient number of grand jurors to serve for one year, and until other persons are selected and returned; and as that duty has been performed, the names of new grand jurors have been selected and returned for the year 1886, from which, if the public interest requires it, a new grand jury for 1886 must be drawn; so that thereby the grand jury of 1885 ceased to exist.

Section 8, article 1, of the constitution, provides that a grand jury shall be drawn and summoned at least once a year in each county. And section 241, Code of Civil Procedure, provides for the drawing and impaneling each year of one grand jury in each county having less than three Superior Court judges, and of two grand juries in each county having more than three Superior Court judges. But while the statutory law fixes the time within the year for the court to order the selection and return of grand jurors liable to serve in the capacity of a grand jury, and limits the time in which they shall serve for the purpose of the drawing and impanelment of a grand jury, it prescribes no specific time for the drawing of the grand jury, or for its official existence after it has been drawn and impaneled. These the law seems to have left to the judicial discretion of the court, for it provides that " every Superior Court, whenever, in the opinion of the court, the public interest must require it, may make an order directing a jury to be drawn " (Code Civ. Proc., sec. 241); and when the proceedings put in motion by an order made for the purpose result in the drawing and impanelment of a grand jury, it is, as an organized body, in the exercise of its functions and in its official exist- ence, subject to the control of a court that is " always

open," and may at any time, in the exercise of its jurisdiction, order it to be discharged. (Pen. Code, sec. 906.)

A grand jury cannot dissolve itself (*Clem* v. *State*, 33 Ind. 414); and as the grand jury whose authority is challenged was not impaneled for any particular time prescribed by law, and has not been discharged by the court in which it is acting, it still exists as an original body, with power to perform its duties.

Besides, even if we were to assume that for which counsel for the petitioner contends, namely, that the time for which the grand jury was drawn ended with the year 1885, and that a new grand jury for 1886 ought to have been drawn and the old jury discharged, that, of itself, would not, in the absence of proof that a new grand jury for 1886 was in fact *drawn*, dissolve the old, nor affect its authority to perform the duties of such a body. As an organized grand jury, it would be competent to act under color of lawful authority. Having been appointed to office, and having taken the oath of office, the individual members are officers of the court, not only *de jure* but *de facto*, and their acts are valid, so far as public rights are concerned, although the title under which they perform those acts may be questionable. It is therefore sufficient to maintain the authority of a grand jury that it has acted under color of lawful authority. An indictment found by a *de facto* grand jury is as regular as one found by a *de jure* grand jury. The title of the one is not assailable collaterally any more than that of the other. (*Commonwealth* v. *McComb*, 56 Pa. St. 365.)

The panel of either may be challenged for irregularities in its formation by any person held to answer for a public offense (Penal Code, chapter 2, title 4); or a person indicted by it may move, after indictment found, to set aside the indictment upon any of the grounds specified in section 995, Penal Code. (*People* v. *Earnest*, 45 Cal. 29.) But the authority of such a body, whether *de facto* or *de jure*, cannot be legally assailed or called in

question by a witness summoned before it. The authority of such a body, exercising its powers as instrumental to the court of which it is a part, must be respected and obeyed.

In *Plymouth* v. *Painter*, 17 Conn. 585, a person who had been chosen a grand juror refused to take the oath of office, but subsequently, no one having been selected to his place, qualified by taking the oath, and thereafter joined in presentments made by the grand jury. The authority of the grand jury was challenged; but the Supreme Court said: " According to all the authorities, here was, undoubtedly, a fair color of right in the person acting as a grand juror to exercise that office, whether he was legally qualified to do so or not. . . . . He was legally appointed to the office and was eligible to such appointment, and claiming a right to act under it, took in due form the oath prescribed by law for the office. These would confessedly be sufficient to confer on him a perfect legal title to the office. . . . . It is a well-settled principle that the acts of an officer *de facto* are valid as far as the rights of the public are concerned, and that the title of such an officer, or the validity of his acts as such, cannot be indirectly called in question to a suit to which he is not a party. This doctrine has been established from the earliest period, and repeatedly confirmed by an unbroken current of decisions down to the present time." (See also *Carpenter* v. *People*, 64 N. Y. 483.) It follows that the validity of the grand jury cannot be drawn in question in a collateral proceeding to punish the petitioner as a contumacious witness for defying its authority. The petitioner is therefore legally held in custody, under a valid judgment rendered by a court of competent jurisdiction, and is not entitled to be discharged.

Writ dismissed and petitioner remanded.

MORRISON, C. J., THORNTON, J., SHARPSTEIN, J., McKINSTRY, J., and ROSS, J., concurred.

MYRICK, J., dissenting.— By the statutes of this state, it is required that in January of each year there shall be selected a list of persons to serve as grand jurors during the ensuing year, or until a new list shall be provided. (Civ. Code Proc., sec. 204.)   The persons whose names are so selected shall serve for one year and until other persons are selected.   (Civ. Code Proc., sec. 210.)   In the city and county of San Francisco there shall be two grand juries drawn and impaneled in each year.   (Civ. Code Proc., sec. 241.)

My construction of these provisions is, that the list of names is to be selected in January of each year, and if a grand jury be drawn and impaneled during the year, its functions as such body cease at least when the list in the succeeding January shall be selected.   The court may dismiss the grand jury at any time, but may not, either by non-action or by order, continue it in existence beyond the selection of the succeeding list.   The language of the statute is, that the persons selected " shall *serve* for one year," etc.; and " to *serve* as grand jurors during the ensuing year."   I do not think that the word "serve " has the signification that they are liable to be *drawn* during the year and *serve* afterwards, but rather, if they serve at all, it shall be within the year.

A list was selected in January, 1885; from that list a grand jury was drawn and impaneled in July, 1885; a new list was selected in January, 1886; but the body drawn in July, 1885, continued to sit as such, and was in session in March, 1886, when the petitioner was called before it, no jury being drawn from the list of 1886.

It seems to be an object of the statute that grand juries shall come from the body of the people at frequent intervals.   If the body impaneled in July, 1885, could be retained or sit beyond the succeeding selection, I know of no limit of time for its retention; for if it may be retained one month it may ten years, even though in the mean time ten lists shall have been selected.

I dissent from the judgment.