BROWN v. WALKER, United States Marshal.

(Circuit Court, W. D. Pennsylvania.    September 11, 1895.)

1. CONSTITUTIONAL LAW—SELF-INCRIMINATING TESTIMONY—FIFTH AMENDMENT TO UNITED STATES CONSTITUTION.
    The provision in the fifth amendment to the constitution of the United States, against compelling a person in a criminal case to be a witness against himself, is not intended to shield a witness from the infamy or disgrace resulting from incriminating testimony, but only from actual prosecution and punishment.

2. SAME—ACT FEB. 11, 1893.
    The act of congress of February 11, 1893, providing that no person shall be excused from testifying in proceedings under the interstate commerce act, on the ground that his testimony may incriminate him, but .that no person shall be prosecuted or subjected to penalty for anything concerning which he may testify, does not contravene the provisions of the fifth amendment to the constitution of the United States, since it affords the witness a protection as broad as the constitutional provision.    U. S. v. James, 60 Fed. 257, disapproved.

Scott & Gordon, for petitioner.
Harry Alvan Hall, for U. S. marshal.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge.    On May 6, 1895, the grand jury of the district court of the United States for the Western district of Pennsylvania had under consideration an indictment charging E. F. Bates and Thomas R. Robinson, officers and agents of the Allegheny Valley Railway Company, with alleged violations of the interstate commerce law, approved February 4, 1887, and its supplements.    Theodore F. Brown, the petitioner, who is the auditor of said company, appeared before the grand jury upon subpœna.    He declined to answer certain questions as to freight charged and rebates given by said road as follows:

"Q. Have you audited the accounts of the freight department of the said railway company during the years 1894 and 1895?    A. I have.    Q. Do you know whether or not the Allegheny Valley Railway Company transported for the Union Coal Company, during the months of July,. August, and September, 1894, coal from any points on the low-grade division of said railroad company to Buffalo at a less rate than the established rates in force between the terminal' points at the time of such transportation?    A. That question, with all respect to the grand jury and yourself, I must decline to answer, for the reason that my answer would tend to accuse and criminate me.    Q. Do you know whether the Allegheny Valley Railway Company, during the year 1894, paid to the Union Coal Company any rebate, refund, or commission on coal transported by said railroad company from points on its·low-grade division to Buffalo, whereby the Union Coal Company obtained a transportation of such coal between the said terminal points at a less rate than the open tariff rate, or the rate established by said company?    If you have such knowledge, state the amount of such rebates or drawbacks or commissions paid, to whom paid, the date of the same, or on what shipments', and state fully all the particulars within your knowledge relating to such transaction or transactions.    A. That question I must also decline to answer for the reasons already given."

Upon report of these facts made by the grand jury through George D. Howell, Esq., its foreman, the district court granted a rule upon

Mr. Brown to show cause why he should not answer the questions or be adjudged guilty of contempt. He again refused for the same reasons, and on report thereof made to the court, he was by it adjudged guilty of contempt, sentenced to pay a fine, and committed to the custody of the marshal until he paid the same and answered the questions. On May 7, 1895, he presented a petition to the circuit court for a writ of habeas corpus. In it, after setting forth the above facts, he alleged his answers would tend to incriminate him, and if compelled to answer, he would be forced to be a witness against himself, contrary to the provisions of the amendment to the constitution; that the act compelling him to testify was unconstitutional; that the district court had no jurisdiction to require him to answer these questions; and that his detention by the marshal was unlawful. Thereupon the writ issued, and to it the marshal made return justifying petitioner's detention under the order of the district court.

The fifth amendment to the constitution provides: "No person * * * shall be compelled, in any criminal case, to be a witness against himself." And in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, it was held this provision was not confined to a criminal case against the party himself; that its object was to insure that one should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show he had committed a crime. It was also held that Rev. St. § 860, which provides that no evidence given by a witness shall be in any manner used against him in any court of the United States in any criminal proceedings did "not supply a complete protection from all the perils against which the constitutional prohibition was designed to guard, and is not a full substitution for that prohibition," and afforded "no protection against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime, and of sources of information which may supply other means of convicting the witness or party."

Following this decision, the act of February 11, 1893, was passed, which provides:

"That no person shall be excused from attending and testifying * * * in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the act of congress, entitled 'An Act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, or of any amendment thereof, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise * * * in any such case or proceeding."

The constitutionality of this act is now challenged on the ground— First, that the constitutional provision already quoted is a protection not only from pains and penalties, but from the infamy which follows the disclosure of the commission of a crime, and that the act simply relieves from pains and penalties; second, that the act does not give a protection as broad as the constitutional privileges, because it places the witness under the necessity of proving the fact, etc., of his having

been called to testify, and leaves him exposed to the jeopardy of conviction; and, third, the act is in substance a pardon and an infringement on the pardoning power vested by the constitution in the executive.

The question is one of grave importance to the petitioner, as involving his alleged constitutional rights, and to the general public, as involving the enforcement of the interstate commerce law. It is clear, if the witness is justified in his refusal to answer, the enforcement of that law is virtually impossible, since violations thereof can be proved only by those who would refuse to answer. Unfortunate as this might be, still, if the enforcement of any act of congress sacrifices the constitutional rights of the citizen, the act must yield to the higher law of the constitution. But when a statute has been passed by the legislative branch of the government, the judicial branch will act with great caution in declaring it unconstitutional, and will do so "only," as Chief Justice Black said, in Sharpless v. Mayor, etc., of Philadelphia, 21 Pa. St. 164, "when it violates the constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation on our minds." For, as Chief Justice Marshall said, in Fletcher v. Peck, 6 Cranch, 126:

"The question, whether a law be void for its repugnancy to the constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

The provision that "no person * * * shall be compelled in any criminal case to be a witness against himself" placed the bulwark of constitutional protection around that which had long been a recognized right of the citizen under the rules of evidence, and was summed up in the time-honored maxim, "Nemo tenetur seipsum accusare." 1 Starkie, Ev. 71, 191; 1 Greenl. Ev. § 451; Whart. Cr. Ev. § 463, and cases cited on page 547 of 142 U. S., and page 195 of 12 Sup. Ct. It was meant to protect him from self-crimination, to exempt him from making disclosures which might lead to his subsequent conviction. It was embodied in an amendment which, in its other provisions, secured his rights in criminal cases, viz. the safeguard of a precedent indictment or presentment,—against his being put twice in jeopardy for the same offense,—and insured him due process of law when life and liberty were at stake. Clearly, its purpose was to shield him from compulsory disclosures which might lead to his conviction of a crime. If the constitutional purpose was to shield him from disclosures which would merely tend to humiliate or disgrace him in the eyes of his fellows, it was not so expressed. Judging from the character of the instrument itself, which is admittedly a model of simplicity and clearness, it is fair to assume that if such a right were deemed worthy of the dignity of constitutional protection, it would have been stated in words so plain "that he may run that read-

eth it." But the obligation of a witness to answer questions of that character, if pertinent to the issue, is well recognized. 1 Rosc. Cr. Ev. 234; 1 Greenl. Ev. (14th Ed.) §§ 455, 456, 458, 459; Thomp. Trials, § 287; Jennings v. Prentice, 39 Mich. 421. And in Parkhurst v. Lowten, 1 Mer. 400, Lord Eldon said:

"Upon the question of character, I hold that, supposing a man to be liable to penalty or forfeiture, provided he is sued within a limited time, and that the suit is not commenced till after the limitation expired, he is bound to answer fully, notwithstanding his answer may tend to cast a very great degree of reflection upon his character and conduct."

In Com. v. Roberts, Brightly, N. P. 109, it was held it was competent for the legislature of Pennsylvania to pass an act under which a witness may be compelled to answer questions which may not show him to be criminal, but which involve him in shame and reproach.

To our mind it is clear the infamy or disgrace to a witness which may result from disclosures made by him are not matters against which the constitution shields, and that so long as such disclosures do not concern a crime of which he may be convicted, the provision quoted does not apply. But does the act of congress give the petitioner as broad protection as the constitutional provision? Unquestionably it does. It says he "shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify or produce evidence, documentary or otherwise." This affords him absolute indemnity against future prosecution for the offense to which the question relates. The act of testifying has, so far as he is concerned, wiped out the crime. It has excepted him from the operation of the law, and, as to him, that which in others is a crime has been expunged from the statute books. If, then, there exists, as to him, no crime, there can be no self-crimination in any testimony he gives, and if there can be no self-crimination, if neither conviction, judgment, nor sentence can directly or indirectly result from his testimony, what need has he for the constitutional provision? For, says Broom (Leg. Max. p. 654), in speaking of the maxim quoted above, "Where, however, the reason for the privilege of the witness or party interrogated ceases, the privilege will cease also; as, if the prosecution to which the witness might be exposed on his liability to a penalty or forfeiture is barred by lapse of time, or if the offense has been pardoned, or the penalty or forfeiture waived,"—a doctrine approved, as we have seen above, by Lord Eldon.

In practical effect, the legislative act throws a greater safeguard around the petitioner than the constitutional provision. Before he testified, he could have been charged with a violation of the interstate commerce law, in which case the amendments only protected him against compulsory self-crimination. He was liable to a possible verdict of guilty if the necessary proofs were given, but under the legislative act, when he has testified the law excepts him from its operation, makes that which was before a possible crime a mere matter of indifference, and shields him from subsequent prosecution. The sweeping words of the statute,—as broad as human language can make them,—afford absolute indemnity to the witness. No crime

exists as to him. It is not a pardon,—not an act of amnesty. No charge can be made against him, for it is illegal to even prosecute him, viz. "No person shall be prosecuted." To our mind, the constitutional provision in words and purpose is plain. In the Counselman Case, the witness was protected from the manifestly self-criminating answers which would have disclosed facts upon which a prosecution, to which he was still left exposed, could be based. But, owing to the act of 1893, no such consequence can ensue if the present petitioner is made to answer. Such being the case, the constitutional provision does not concern him, and if it does not, the act which compels him to testify is not unconstitutional.

In reaching this conclusion we have given due regard to the case of U. S. v. James, 60 Fed. 257, where the act was held to be unconstitutional. While we regret to differ from this only federal decision on the matter, we find support for our position in the opinion of the supreme court of New Hampshire, in State v. Nowell, 58 N. H. 314, and of the supreme court of California in Ex parte Cohen (Cal.) 38 Pac. 364.

The prayer of the petitioner to be discharged will therefore be denied, and he will be remanded to the custody of the marshal.

ACHESON, Circuit Judge. I entirely concur in the views expressed by Judge BUFFINGTON in the foregoing opinion. That opinion is so full and satisfactory that I need do little more than announce my concurrence. The act of February 11, 1893, affords the witness complete immunity from prosecution, and from penalty or forfeiture for or on account of the offense to which the questions propounded to him relate, and therefore his answers cannot tend to criminate him. As he cannot be subjected to any prosecution, penalty, or forfeiture, his case is not within either the letter or the spirit of the fifth amendment to the constitution of the United States.