## *In re* WILLIAM E. DAVIES.
**No. 13,819.**  (75 Pac. 1048.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Habeas Corpus—Grand Jury a De Facto Body.* A grand juror was discharged by the court from the panel because it appeared that a criminal prosecution was pending in the same court against him. Another juror was ordered summoned to fill the place. The jury was then sworn and charged. *Held*, that the grand jury was at least a *de facto* body, and that its legality was not subject to attack or inquiry in a *habeas corpus* proceeding.

2. EVIDENCE—*Privileged Communications—Public Policy.* It is not against public policy to require a banker to disclose the amount of a depositor's balance, nor are the transactions between a banker and depositor privileged or confidential, in a legal sense.

Original proceeding in *habeas corpus*.  Opinion filed March 12, 1904.  Writ denied.

STATEMENT.

AT the November, 1903, term of the district court of Clay county, a grand jury was impaneled, charged, and sworn. It entered upon the performance of its

duties, and was investigating the conduct of one John Bellringer, to determine whether he had committed perjury in making a return, under oath, to the assessor of Highland township in said county, in June, 1903, in omitting to set forth all personal property which he was required by law to list for the purpose of taxation. To ascertain the amount of money Bellringer had on deposit on March 1, 1903, the petitioner, William E. Davies, was called before the grand jury, and, being sworn, testified that he was cashier of the Bank of Green, and that John Bellringer, a citizen of Highland township, was a customer of the bank. This question was then propounded to the witness : ''I will ask you to state, Mr. Davies, the amount of money Mr. John Bellringer had on deposit in the Bank of Green March 1, 1903?'' The petitioner objected, on five grounds, to answer. The objections relevant to this proceeding were :

''Third : I object, protest and refuse to disclose any matters pertaining to the business relations between the bank and its patrons and customers, for the reason that the grand jury is without authority in law to require any officer of the bank to make a disclosure of such matters.

''Fourth : I object and refuse to disclose any matters pertaining to the business relations between the bank of which I am an officer and its customers and patrons, for the reason that the making of such disclosures would be destructive of the bank's property and its assets, and would destroy public confidence in the bank, and for the further reason that all such matters are privileged communications, and I have no right or authority in law to disclose the relations that are thus privileged.

''Fifth : I object to the question and refuse to answer the question, and refuse to disclose any of the business relations between the bank of which I am

an officer and its patrons and customers, for the reason that the demand upon me to do so is violative of my rights and the rights of the bank of which I am an officer, and of the customers and patrons of the bank, as declared by the constitution of the state of Kansas in section 15 of the bill of rights, and of the constitution of the United States as contained in article 4 of the amendments to the United States constitution.''

The grand jury submitted to the court in writing the question asked, together with the objections of the witness. The court held that the question was a proper one. The petitioner was again called before the grand jury and again interrogated. On his refusal to answer, he was brought before the court, adjudged guilty of contempt, a fine of twenty-five dollars imposed, and he was ordered by the court to stand committed to jail until the amount was paid.

In a journal entry of the proceedings is the following recital :

''And it appearing to the court that said Ernest Lindner is defendant in a certain criminal action now pending in said court, he was discharged from further attendance as a grand juror.''

On the order of the court, another person was summoned to fill the place of the excused juror. Thereupon a foreman was appointed by the court and the jury was sworn and charged.

This is a proceeding in *habeas corpus* for petitioner's discharge from imprisonment for the contempt, as above set forth.

*F. L. Williams*, for petitioner.

*R. C. Miller*, for respondent.

The opinion of the court was delivered by

SMITH, J.: Counsel for petitioner contends that the discharge of the the grand juror Lindner was an arbitrary act of the court, without justification in law, and that the substitution of another person in his stead divested the grand jury of jurisdiction to inquire concerning crimes committed in the county, or to indict persons therefor. It is unnecessary to discuss the question further than to say that the grand jury, when it propounded the question which the petitioner refused to answer, was at least a *de facto* body. ( *The State v. Marsh*, 13 Kan. 596 ; *In re McElroy*, 10 Kan. App. 348, 58 Pac. 677 ; *The State, ex rel. Dunn, v. Noyes*, 87 Wis. 340, 58 N. W. 386, 41 Am. St. Rep. 45, 27 L. R. A. 776 ; *In re Gannon*, 69 Cal. 541, 11 Pac. 240 ; *Ex parte Haymond*, 91 id. 545, 27 Pac. 859.)

The four cases last cited hold to the doctrine that the legality of a *de facto* grand jury cannot be inquired into on *habeas corpus* proceedings for discharge from commitments based on indictments found by such body, under the rule that the acts of *de facto* officers cannot be questioned collaterally. ( See, also, *Andrews v. Swartz*, 156 U. S. 272, 15 Sup. Ct. 389, 39 L. Ed. 422.)

It is next insisted that the petitioner should be discharged because the matter concerning which he was interrogated was privileged, and that to require a disclosure by a banker of the amount standing to a depositor's credit on the bank books would be against public policy. Counsel, thus contending, frankly admits that he has found no adjudicated case which sustains his position. The relation of debtor and creditor exists between a depositor and a banker. By the inquiry in this case, it was sought to ascertain how much the bank owed Bellringer on March 1. The ordinary

*In re* Davies.

debtor would hardly stop to assert a privilege in his behalf to protect him from disclosing the amount owing by him to another. Again, it is argued that to permit grand juries or courts to inquire into such private affairs of business men would cause withdrawal of deposits from banks annually for many weeks preceding the 1st of March—some to escape taxation, others to avoid publicity. It is a sufficient answer that annoyance to depositors or the loss to banks predicted by counsel has never appealed to courts or legislatures with enough force to work a change in the rules of evidence. In the case of *Loyd v. Freshfield*, 2 C. & P. 325, decided in 1826, it was held that a banker was bound to answer what a party's balance was on a given day, as it was not a privileged communication. The rule finds approval in the textbooks. (1 Tayl. Ev., Am. ed., § 916; Greenl. Ev., 15th ed., § 248. See, also, *Mackenzie v. Taylor*, 6 L. C. J. 83; *Hannum v. M'Rae*, 18 Ont. Pr. Rep. 185.)

The contention that to compel a disclosure from the witness would be an unreasonable search for and seizure of the depositor's property is untenable. To obtain information from a witness of the amount and location of another's money or property cannot come within the constitutional inhibition against unreasonable searches and seizures. There was nothing confidential, in a legal sense, between Davies, the banker, and his depositor, which would allow the former to assert that the business transactions between them were privileged.

The writ of *habeas corpus* will be denied and the prisoner remanded.

All the Justices concurring.