## UNITED STATES v. PRICE et al.

### SAME v. HAAS et al.

(Circuit Court, S. D. New York.   August 28, 1908.)

1. WITNESSES—PRIVILEGE OF WITNESS—GRAND JURY—EXAMINATION OF ACCUSED—"PART OF CRIMINAL PROCEEDINGS AGAINST ACCUSED."

   It is a rule established by federal decision that the submission of an indictment to a grand jury, and the examination of witnesses before them in relation to the same, are no part of criminal proceedings against the accused within the meaning of the fifth constitutional amendment, but are merely to assist the grand jury in determining whether such proceedings shall be commenced, and where the accused, afterward indicted by the same grand jury, are brought before them as witnesses by subpœna, they are not parties to any proceeding then and there in progress, and must rest their claim of privilege or immunity upon the rights of a witness, and not those of a party.

2. SAME.

   Persons subsequently indicted, who were brought before the same grand jury by subpœna as witnesses in the investigation of the matter out of which the indictments arose, and, after being fully advised of their constitutional rights and privileges, were asked merely formal questions which they refused to answer under claim of privilege, were not thereby compelled to be witnesses against themselves in a criminal case, in violation of the fifth constitutional amendment.

### On Motion to Quash Indictments.

On or about April 30, 1908, Jesse C. Adkins, Esq., was duly appointed by the Attorney General of the United States to be a special assistant to the United States attorney for this district. In the language of the letter of designation such appointment was "to aid in the investigation of the 'cotton leak matter,' with a view of obtaining indictments—if the evidence warrants—against Moses Haas, Theo. H. Price, and others." The "matter" referred to attracted public attention as long ago as 1905, and was in substance a suspicion that Haas, Price, and others interested in speculative purchases and sales of cotton had obtained through·one Holmes, an "Assistant Statistician" in the Department of Agriculture, early if not secret information regarding the planting of cotton and the condition of the growing crop, which information might be useful to them in dealing with persons not so well informed. The May grand jury for this district being in session, it was attended by Mr. Adkins, as well as by the district United States attorney and his regular assistants, and by their suggestion the jurors began an investigation into said "matter." At the time of the occurrences giving rise to these motions, no indictment had been found growing out of "cotton leak" transactions, no complaint or information had been filed, nor had any person been arrested or held for examination by reason thereof. It appears by affidavit that counsel for the United States or some of them were informed that Price desired to make a statement to them, and that Haas was willing to give testimony, if himself guaranteed immunity from prosecution. Later, however, said counsel were advised that Haas had concluded not to testify, and that Price would make no statement to the grand jury. Before Price had definitely made this statement, a subpœna directed to him and requiring attendance before the grand jury was issued, but not legally served. He, however, became fully aware of its existence and tenor. After Haas' alleged change of mind be-

came known to the United States attorneys, a similar subpœna was duly served upon him. Both these subpœnas were in usual form, and required the attendance of Price and Haas, respectively, to testify "all and everything you may know in a certain cause now pending and undetermined in [this] court between the United States and * * * on the part of the United States." Haas appeared in obedience to the subpœna, and Price, after learning through counsel that if he did not come, despite the informality of service, he would ultimately be compelled so to do, also attended in the grand jury room. Both were duly and fully informed of their constitutional rights, and that the jurors were investigating the "cotton leak." Both protested against being sworn. Each was asked whether he knew the other, and both refused to answer on constitutional grounds. A few other wholly unimportant questions were asked, privilege claimed as to each, and the episode then closed without either of the moving parties having uttered any words which could be regarded as evidence against anybody. Thereafter these indictments (based on alleged "cotton leak" wrongdoing) were found against both Price and Haas, and by the same grand jury before which they had appeared.

Both now move to quash said indictments on the ground that the proceedings above outlined constitute an invasion of rights guaranteed by the fifth amendment of the Constitution, in that compelling attendance of persons ultimately indicted, and swearing them as witnesses makes them witnesses against themselves, even though by prompt claim of privilege no words of the slightest evidential value are uttered. Defendants' claim may be thus fairly stated: It is a breach of constitutional privilege to compel the possible defendant in a criminal case to elect before any grand jury having power to indict him, whether or not to claim said privilege.

Nicoll, Anable, Lindsay & Fuller, for Price.

Nash Rockwood, for Haas.

Henry L. Stimson, U. S. Atty., and Jesse C. Adkins, Goldthwaite H. Dorr, and Charles A. Roberts, for the United States.

HOUGH, District Judge (after stating the facts as above). A part of the argument addressed to the court appeared to assert that Price and Haas had been oppressed by the agents or attorneys of the United States. Let it be assumed that discretionary power rests in the court to quash an indictment found by coercion or oppression of jurors or witnesses or by device or trick inconsistent with the fair and honorable administration of law, yet there is nothing even in defendants' affidavits giving color to a suggestion of such conduct in this proceeding. What was done was all in the open, with every opportunity for defendants to consult counsel, and not one of the formal questions put (the examination never got further) was even asked before full and fair knowledge of his legal privilege had been given each of the present defendants, and by one or several representatives of the United States. This conclusion is reached without reading the minutes of the grand jury—a means of information doubtless legal, but in my opinion not to be resorted to if recourse can be avoided, because the grand inquest is not only a supremely important, but wholly independent part of our legal system, and prying into its records directly tends to subordinate that jury to the court and to increase technicality of procedure; two results equally to be deplored.

The real and only questions raised by these motions are narrow but important matters of law; i. e.: Were these defendants by the transactions above stated (1) compelled to be witnesses against themselves

(2) in a criminal case? To avoid side issues it will be assumed (but not decided) that Price attended the grand jury under compulsion.

The second of the queries stated requires consideration of the nature of a grand jury proceeding before indictment found. Defendants assert that by a necessary legal fiction the indictment is drawn, and is physically in existence before the grand jury convenes; that it is then with supporting evidence laid before the jurors, who thereupon find or ignore it. It follows that the "criminal case" begins with the naming of a defendant in the unfound indictment, and theoretically antedates the grand jury itself. It follows, also, that the person named in such indictment is as much on trial (though in a different way) when before the grand jurors as he is after due arraignment before a petit jury. This view is thought to find support in People v. Kelley, 24 N. Y. 74; People v. Sheriff, 11 Civ. Proc. R. (N. Y.) 182. I do not, however, find it necessary to consider whether this narrow and technical statement of grand jury proceedings is justified by New York or other state decisions. The true doctrine is, I believe, established by national courts of controlling authority, and is that the submission of an indictment to a grand jury and the examination of witnesses before them in relation to the same are "no part of criminal proceedings against the accused, but are merely to assist the grand jury in determining whether such proceedings shall be commenced." Post v. United States, 161 U. S. 583, 16 Sup. Ct. 611, 40 L. Ed. 816; United States v. Reed, 2 Blatchf. 435, Fed. Cas. No. 16,134. It must, therefore, be held that Price and Haas were not on trial before the grand jury, were not parties to any proceeding then and there in progress, and must rest their claim of privilege or immunity upon the rights of a witness, and not those of a party.

The constitutional provision is but the affirmance of the common-law maxim, "Nemo tenetur seipsum accusare." It cannot be understood without knowledge of the common-law rule, and is to be interpreted thereby. It is intended solely to prevent disclosures by persons acting as witnesses in any investigation, and has no logical or historical relation to the rights of parties as such. Counselman v. Hitchcock, 142 U. S. 574, 12 Sup. Ct. 195, 35 L. Ed. 1110; Kepner v. United States, 195 U. S. 100, 24 Sup. Ct. 797, 49 L. Ed. 114; United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890; Brown v. Walker (C. C.) 70 Fed. 48; Story on the Constitution, § 1288. The immunity of a party in a criminal case rests likewise upon a rule of the common law, long antedating the Constitution, and quite different from the rule regarding self-accusation, viz., the exclusion from the witness stand of all parties to the record, because their interest was thought to be so great as to render them unworthy of belief. Benson v. United States, 146 U. S. 335, 13 Sup. Ct. 60, 36 L. Ed. 991.

This rule was not changed by the Constitution, and existed in full force in most English-speaking courts until almost within the memory of men still living. For the federal courts the practice is now regulated by Act March 16, 1878, c. 37, 20 Stat. 30 (U. S. Comp. St. 1901, p. 660), declaring that in all proceedings against persons "charged with the commission of crimes" the person charged shall be a witness "at

his own request, but not otherwise." Thus I think the defect of defendants' argument is shown by authorities controlling in courts whose prime duty it is to authoritatively expound the national Constitution. Price and Haas were not parties, but as witnesses claim a party's statutory (not constitutional) privilege. Regarding these men as witnesses only, it is settled law that no right either constitutional or statutory was infringed by compelling their attendance and administering the oath. United States v. Kimball (C. C.) 117 Fed. 156, followed in United States v. Greene & Doremus, Sup. Ct. Dist. Columbia (unreported), where a lengthy series of vital questions to each of which privilege was pleaded, was permitted on motions like the present. The reason for this is that the constitutional privilege is personal to the witness, must be claimed by him, may be passed on by the court, and the claimant only becomes a witness by being duly sworn or affirmed as such. People v. Lauder, 82 Mich. 109, 46 N. W. 956; State v. Comer, 157 Ind. 611, 62 N. E. 452; State v. Duncan, 78 Vt. 364, 63 Atl. 225, 4 L. R. A. (N. S.) 1144, 112 Am. St. Rep. 922. The constitutional provision is therefore, as said by Prof. Wigmore in his illuminating discussion of the subject "an option of refusal and not a prohibition of inquiry" (Wigmore on Evidence, § 2268), and, when these defendants were duly and legally summoned to inquiry and put to their option, no right was violated, and the suggestion that they severally appeared in an unfavorable light while claiming privilege before the men who could indict them is especially immaterial in a country where "there is more danger that criminals will escape justice than that they will be subjected to tyranny." Kepner v. United States, 195 U. S. 134, 24 Sup. Ct. 797, 49 L. Ed. 114.

It is quite true that the constitutional view, which by confounding the privilege of a witness with the rights of a party (or to speak more accurately the exclusion of a party) makes of a suspect a person sacrosanct, has received much judicial approval. The extent and nature thereof is reviewed in People v. Gillette (Sup.) 111 N. Y. Supp. 133, 39 N. Y. Law J. 1293 (June 18, 1908), and from the reasoning of that case I respectfully dissent. Some aid for defendants' contention is thought to be found in such cases as Stokes v. State, 5 Baxt. (Tenn.) 619, 30 Am. Rep. 72, where the Constitution was held infringed by asking defendant to make a foottrack before the jury. The numerous cases on demonstrative evidence are, I think, beside the question before the court, but it may be said that I think the better view is set forth in the recent case of Magee v. State (Miss.) 46 South. 529. See, also, Wigmore on Evidence, § 2265.

Motion denied.