[Crim. No. 1901. First Appellate District, Division Two.—June 29, 1936.]

In the Matter of the Application of FREDERICK LEMON for a Writ of Habeas Corpus.

Harry A. McKenzie, J. H. Sapiro and Edwin V. McKenzie for Petitioner.

Matthew Brady, District Attorney, and Leslie C. Gillen, Assistant District Attorney, for Respondent.

SPENCE, J.—Petitioner appeared in response to a subpoena but he refused to be sworn as a witness in an investigation which was being conducted by the grand jury in the city and county of San Francisco. In proceedings instituted in the superior court, petitioner was ordered by said court to appear before said grand jury and to be sworn and to testify in said investigation. Petitioner appeared as directed but again refused to be sworn. Thereafter petitioner was cited to appear before the superior court and show cause why he should not be adjudged guilty of contempt. Upon a hearing before the superior court, petitioner was adjudged guilty of contempt for failure to obey the order of the court above mentioned. He was committed to the custody of the sheriff until he obeyed said order. He is now seeking his release, claiming that the order adjudging him guilty of contempt and the warrant of commitment were void.

Petitioner raises several points in support of his claim of invalidity, but we find no merit in any of them. The only point that requires discussion is his claim that he was a "potential defendant" as he was one of a class of persons under investigation and that he therefore had a constitutional right to refuse to be sworn as a witness before said grand jury. Before discussing this point certain facts should be stated.

It appears that the grand jury was conducting a general investigation involving alleged corruption in the police department of the city and county of San Francisco. During said investigation petitioner, who was a police captain, and

other members of said department were subpoenaed as witnesses. Some of said members were sworn and testified, but petitioner steadfastly refused to be sworn. The record of the proceedings shows that petitioner was advised of the nature of the investigation and of his rights. Among other things he was advised that any answer he might give could subsequently be used against him and was further advised of his privilege to refuse to answer any question, an answer to which would have a tendency to incriminate him. On each of his appearances before the grand jury, petitioner asked permission to read a statement but that permission was refused unless he was first sworn. He was advised that his failure to be sworn constituted a contempt, but he persisted in his refusal to be sworn even in response to the order of the court. Thereupon the contempt proceedings were instituted as above set forth resulting in his commitment until he obeyed the order of the court. The statement which petitioner desired to read on each appearance before the grand jury was one claiming that petitioner had a constitutional right to decline to be sworn or to answer any question whatever on the ground that the investigation was directed at a class of which he was a member.

Petitioner bases his claim of privilege upon the provisions of both the Constitution of the United States (Amendments, art. V, sec. 1) and the Constitution of the state of California. (Art. I, sec. 13.) While we do not believe that petitioner may invoke the provisions of the fifth amendment of the Constitution of the United States in this proceeding (*Twining* v. *New Jersey,* 211 U. S. 78 [29 Sup. Ct. 14, 53 L. Ed. 97] ; Wigmore on Evidence, 2d ed., sec. 2252, p. 836), we deem it unnecessary to pass upon the question here. The wording of both the federal and the state Constitutions on this subject is practically identical and furthermore, if, as asserted by petitioner, the decisions of the federal courts are binding authority, said decisions fail to support petitioner's claim and are contrary thereto.

The fallacy underlying petitioner's claim is that he has confused the position of one having the status of a witness in any proceeding, civil or criminal, with the position of one having the status of a party defendant in a criminal proceeding brought against such defendant. As will be seen from the authorities hereinafter cited, the sounder view is that

a grand jury investigation is in no proper sense a criminal proceeding and that no person has the status of a party defendant in such investigation which is held merely for the purpose of determining whether any criminal proceeding shall be commenced.

The provision of our Constitution relied upon by petitioner cannot be properly understood and applied without knowledge of its historical background. It is a counterpart of the provision of the federal Constitution above referred to and similar provisions are embodied into the constitutions and statutes of practically all of the states. The precise wording of these several provisions varies to some degree but it appears that provisions of the constitutions and statutes of most of the states were adopted almost *verbatim* from the provision of the federal Constitution. It is significant to note that at the time of the adoption of the federal Constitution, and at the time of the adoption of the constitutions of most of our states, neither a party to a civil action nor a defendant in a criminal proceeding was a competent witness either for or against himself. Nevertheless, there was embodied into our federal Constitution a provision similar to that now found in section 13 of article I of our own Constitution which reads as follows: ''No person shall be . . . compelled, in any criminal case, to be a witness against himself.''

This provision had its origin in the common-law principle that no man could be compelled to incriminate himself. This principle in turn probably had its origin ''in the abhorrence with which confessions coerced by inquisitorial torture were regarded alike in England and America''. (*In re Tahbel*, 46 Cal. App. 755, 758 [189 Pac. 804, 806].) Although a defendant in a criminal case was not a competent witness for or against himself in England or America until about the middle of the nineteenth century, the practice of exacting involuntary confessions and using them as a basis for prosecution was an ancient one and such practice had long been condemned and prohibited under the common law. The principle was broad enough to protect a witness in any type of proceeding from the involuntary disclosure of facts which would tend to incriminate him. The historical development of the common-law rules is exhaustively treated in Wigmore on Evidence, second edition, section 2250 et seq., and we need not further discuss it.

When the fifth amendment to the Constitution of the United States was first proposed by Mr. Madison, the proposed provision read, "No person . . . shall be compelled to be a witness against himself." The accounts of the debates show that this was deemed to be too broad and the proposal was amended by adding the words "in any criminal case". (Annals of Congress, vol. 1, p. 753; *United States* v. *Three Tons of Coal,* 6 Bissell, 379, 387, Fed. Cas. No. 16,515.) The wording of the proposal as amended may not have been happily chosen for undoubtedly the privilege intended to be given was the common-law privilege against self-incrimination in any proceeding, civil or criminal, and the courts have liberally construed the various constitutional provisions to confer such privilege. As stated by Wigmore in section 2252, at page 834, the variety of phrasing found in the various constitutions "neither enlarges nor narrows the scope of the privilege as already accepted, understood, and judicially developed in the common law". The privilege then is "merely an option of refusal, not a prohibition of inquiry" (Wigmore on Evidence, 2d ed., sec. 2268), and it is a privilege accorded to all witnesses in all proceedings and has no relation to the rights of parties. (*United States* v. *Price,* 163 Fed. 904.)

The discussion found in *United States* v. *Price, supra,* is pertinent to the subject under consideration and we quote at some length from that decision. The grand jury was there investigating a so-called "cotton leak". A special assistant United States attorney was appointed "with a view of obtaining indictments—if the evidence warrants—against Moses Haas, Theo. H. Price and others". Both of these men were subpoenaed, informed of the nature of the investigation and advised of their rights. They protested against being sworn, but they were nevertheless sworn and thereafter refused to testify. They later moved to quash the indictments on the ground that their constitutional rights had been violated when they were sworn as they were thereby compelled to be witnesses even though they thereafter promptly claimed the privilege of declining to answer questions on the ground that the answers would tend to incriminate them. The motion was denied.

The court there said on pages 906 and 907, "The true doctrine is, I believe, established by national courts of con-

trolling authority, and is that the submission of an indictment to a grand jury and the examination of witnesses before them in relation to the same are 'no part of criminal proceedings against the accused, but are merely to assist the grand jury in determining whether such proceedings shall be commenced'. (*Post* v. *United States*, 161 U. S. 583 [16 Sup. Ct. 611, 40 L. Ed. 816]; *United States* v. *Reed*, 2 Blatchf. 435, Fed. Cas. No. 16,134.) It must, therefore, be held that Price and Haas were not on trial before the grand jury, were not parties to any proceeding then and there in progress, and must rest their claim of privilege or immunity upon the rights of a witness, and not those of a party.

"The constitutional provision is but the affirmance of the common-law maxim, '*Nemo tenetur seipsum accusare*'. It cannot be understood without knowledge of the common-law rule, and is to be interpreted thereby. It is intended solely to prevent disclosures by persons acting as witnesses in any investigation, and has no logical or historical relation to the rights of parties as such. (*Counselman* v. *Hitchcock*, 142 U. S. 574 [12 Sup. Ct. 195, 35 L. Ed. 1110]; *Kepner* v. *United States*, 195 U. S. 100 [24 Sup. Ct. 797, 49 L. Ed. 114, Ann. Cas. 655]; *United States* v. *Wong Kim Ark*, 169 U. S. 649 [18 Sup. Ct. 456, 42 L. Ed. 890]; *Brown* v. *Walker*, (C. C.) 70 Fed. 48; Story on the Constitution, sec. 1288.) The immunity of a party in a criminal case rests likewise upon a rule of the common law, long antedating the Constitution, and quite different from the rule regarding self-accusation, viz., the exclusion from the witness stand of all parties to the record, because their interest was thought to be so great as to render them unworthy of belief. (*Benson* v. *United States*, 146 U. S. 325, 335 [13 Sup. Ct. 60, 36 L. Ed. 991].)

"This rule was not changed by the Constitution, and existed in full force in most English-speaking courts until almost within the memory of men still living. For the federal courts the practice is now regulated by Act March 16, 1878, c. 37, 20 Stat. 30 (U. S. Comp. St. 1901, p. 660), declaring that in all proceedings against persons 'charged with the commission of crimes' the person charged shall be a witness 'at his own request, but not otherwise'. Thus I think the defect of defendants' argument is shown by authorities controlling in courts whose prime duty it is to authoritatively expound the national Constitution. Price and Haas were not parties, but

as witnesses claim a party's statutory (not constitutional) privilege. Regarding these men as witnesses only, it is settled law that no right either constitutional or statutory was infringed by compelling their attendance and administering the oath. *United States* v. *Kimball,* (C. C.) 117 Fed. 156, followed in *United States* v. *Greene & Doremus,* Sup. Ct. Dist. Columbia (unreported), where a lengthy series of vital questions to each of which privilege was pleaded, was permitted on motions like the present. The reason for this is that the constitutional privilege is personal to the witness, must be claimed by him, may be passed on by the court, and the claimant only becomes a witness by being duly sworn or affirmed as such. (*People* v. *Lauder,* 82 Mich. 109 [46 N. W. 956] ; *State* v. *Comer,* 157 Ind. 611 [62 N. E. 452] ; *State* v. *Duncan,* 78 Vt. 364 [63 Atl. 225, 112 Am. St. Rep. 922, 6 Ann. Cas. 602, 4 L. R. A. (N. S.) 1144].) The constitutional provision is therefore, as said by Prof. Wigmore in his illuminating discussion of the subject 'an option of refusal and not a prohibition of inquiry' (Wigmore on Evidence, sec. 2268), and, when these defendants were duly and legally summoned to inquiry and put to their option, no right was violated, and the suggestion that they severally appeared in an unfavorable light while claiming privilege before the men who could indict them is especially immaterial in a country where 'there is more danger that criminals will escape justice than that they will be subjected to tyranny'. (*Kepner* v. *United States,* 195 U. S. 134 [24 Sup. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655].)

"It is quite true that the constitutional view, which by confounding the privilege of a witness with the rights of a party (or to speak more accurately the exclusion of a party) makes of a suspect a person sacrosanct, has received much judicial approval. The extent and nature thereof is reviewed in *People* v. *Gillette,* 126 App. Div. 665 [111 N. Y. Supp. 133], 39 N. Y. L. J. 1293 (June 18, 1908), and from the reasoning of that case I respectfully dissent."

The case of *People* v. *Gillette,* 126 App. Div. 665 [111 N. Y. Supp. 133], and the case of *People* v. *Bermel,* 71 Misc. 356 [128 N. Y. Supp. 524], are strongly relied upon by petitioner. Neither case is in point here as in each of said cases the witness took the oath and testified. The language of these and other cases lends support to petitioner's views but that

language has been repudiated and we are not inclined to follow it.

In *O'Connell* v. *United States,* 40 Fed. (2d) 201, the court said at page 205, ''The final contention of the appellant is that, regardless of the details of his examination, it was a violation of his rights under the Fifth Amendment to require him to be sworn and examined before the grand jury, because its investigation, though ostensibly general, was in reality an attempt to secure from his own mouth evidence upon which to indict him. Some judicial support may be found for such a view. (See *People* v. *Gillette,* 126 App. Div. 665, 668 [111 N. Y. Supp. 133]; *People* v. *Bermel,* 71 Misc. 356, 357 [128 N. Y. Supp. 524].) *But it has not prevailed generally. (United States* v. *Price,* 163 Fed. 904 [C. C. S. D. N. Y.]; *United States* v. *Kimball,* 117 Fed. 156 [C. C. S. D. N. Y.]; *Commonwealth* v. *Bolger,* 229 Pa. 597, 603 [79 Atl. 113]; *State* v. *Cox,* 87 Ohio St. 313, 346 [101 N. E. 135]; *State* v. *Howat,* 107 Kan. 423, 430 [191 Pac. 585]; Wigmore, Evidence (2d ed.) sec. 2268.) As Prof. Wigmore has aptly said, the constitutional provision is 'an option of refusal and not a prohibition of inquiry'. Were it otherwise, any suspect would be sacrosanct, and witnesses most likely to know the facts could refuse any aid to an investigation of the crime. The mere summoning of a witness before the grand jury gives no basis for the assumption that his constitutional privilege will be impaired. *His duty is to answer frankly until some question is propounded, the answer to which might tend to self-incrimination.''* (Italics ours.) (See, also, *Mulloney* v. *United States,* 79 Fed. (2d) 566.)

In *Ex parte Barnes,* 73 Tex. Cr. Rep. 583 [166 S. W. 728, 51 L. R. A. (N. S.) 1155], the commitment of petitioner for contempt for her refusal to be sworn before the grand jury was upheld. The court there said, ''It would seem from the proof offered by the district attorney that relator presumed that she was going to be questioned by the grand jury about alleged incestuous relations between her and her father. This furnishes no excuse for refusing to be sworn to answer such questions as might be propounded to her by the grand jury. After being sworn, if such questions were propounded, then, and not until then, would she be justified in refusing to answer such questions.''

Petitioner places great reliance upon certain language of the court in *Counselman* v. *Hitchcock*, 142 U. S. 547 [12 Sup. Ct. 195, 35 L. Ed. 1110], but here the language which tends to support petitioner's claim was unnecessary to the decision. The witness there appeared before the grand jury, took the oath and testified. His privilege to decline to answer certain questions on the ground that the answers would tend to incriminate him was sustained. The soundness of the decision is beyond question. The court repudiated the view that the federal Constitution protected the witness only in a criminal case against himself and indicated on pages 563 and 564 that the constitutional privilege of the witness was coextensive with the common-law privilege and applied "in any proceeding". The statement therefore on page 562 that the investigation by the grand jury was "a criminal case" was not required. But that decision of the United States Supreme Court does not, as stated by petitioner, have the effect of overruling in principle *Ex parte Stice,* 70 Cal. 51 [11 Pac. 459]. There the witness who was charged with the same offense under a separate indictment, refused to be sworn in the trial of the other defendant. His commitment for contempt was upheld. There, as here, the witness was claiming the status of a party defendant in the proceeding in which he was called while his status was merely that of a witness. He was a competent witness and his privilege therefore did not entitle him to decline to be sworn but merely entitled him to decline to answer questions the answers to which would tend to incriminate him. (See, also, *People* v. *Plyler,* 121 Cal. 160 [53 Pac. 553]; *People* v. *Ye Foo,* 4 Cal. App. 730 [89 Pac. 450].)

Nor is the case of *Ex parte Stice, supra,* overruled in principle by *Ex parte Gould,* 99 Cal. 360 [33 Pac. 1112, 37 Am. St. Rep. 57, 21 L. R. A. 751], as claimed by petitioner. The main proceeding there was a contempt proceeding against the party called as a witness. Said party declined to be sworn. It was there held that "Contempt of court is a specific criminal offense" and that as Gould was the defendant, he could not be compelled to be sworn. That decision is in entire harmony with the decision in *Ex parte Stice, supra.*

We need not discuss the other numerous authorities cited by petitioner. Suffice it to state, that there is not a single case cited by petitioner which actually holds that a "prospective defendant" has a constitutional privilege to decline to be

sworn as a witness in an investigation before a grand jury. The language of the New York cases which indicates that a "prospective defendant" has that privilege is not based upon sound reason nor supported by the better authorities. It is entirely apparent from reading said cases that the rule indicated therein will not only be difficult to apply but will also seriously hamper the work of grand juries in exercising their functions. We live in an age of enlightened government, but nevertheless in an age when the detection and punishment of crime is becoming increasingly difficult. The rules which had their origin in the days of tyranny and oppression have been abandoned in many instances because of the changed conditions. We are not suggesting that the constitutional provisions which protect a witness from self-incrimination should be discarded, but we refuse to adopt a view which would extend the constitutional privilege beyond its proper limits and beyond the point necessary for the protection of the individual. The privileges of the individual citizen must be safeguarded but the rights of society should not be forgotten.

Under the view which we have adopted, petitioner is not deprived of any privilege which is or should be guaranteed to him. It is the duty of every citizen, and need we say of every police officer, to assist in the administration of justice. Every person may be compelled to attend and to be sworn before the grand jury. It is his duty to answer all proper questions addressed to him in any investigation unless and until the answer to a particular question would tend to incriminate him. Then, and then only, does his constitutional privilege intervene and furnish him with a shield against self-disclosure. Petitioner may possibly now have knowledge of facts and circumstances which would tend to incriminate persons who previously served under him or perhaps other persons and the disclosure of these facts and circumstances might have no tendency to incriminate him. If so, it is his duty to relate them. He may not stand mute and refuse to take the oath or testify to such facts. Carrying petitioner's contention to its logical conclusion, every police officer in San Francisco and every person who might be suspected of giving a bribe to a police officer could designate himself as a "prospective defendant" and refuse to be sworn in said investigation. Such is not and should not be the law in this

jurisdiction, for it would carry the privilege far beyond the point to which it is necessary to protect the individual against self-incrimination.

In order that we may not be misunderstood, and in further distinguishing the authorities cited by petitioner, we wish to point out that we are not here dealing with the question of whether a party defendant may be compelled to be sworn in a criminal action brought against him; nor are we dealing with the question of what particular questions petitioner may decline to answer after being sworn as a witness; nor are we dealing with the question of the effect of the failure to give a witness, who is subsequently indicted, a proper warning before testifying in an investigation before a grand jury. It is to these points that petitioner's authorities are directed and we find none of them in point. The purpose of the warning above mentioned is to put the witness on his option as to any questions the answer to which would tend to incriminate him. If he gives answers tending to incriminate him after receiving such warning, his answers are treated as voluntary but if the witness testifies before a grand jury under process or while in custody without having such warning, his answers are ordinarily treated as given under compulsion and the constitutional privilege may subsequently be invoked. (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042].)

In view of our conclusion that petitioner had the status of a witness and could claim only the privilege accorded to him as a witness, it, of course, follows that he was properly adjudged guilty of contempt. (*In re Gannon,* 69 Cal. 541 [11 Pac. 240].)

The writ is discharged and the petitioner is remanded to custody.

Nourse, P. J., and Sturtevant, J., concurred.