Charlie CROOM, Appellant,

v.

UNITED STATES, Appellee.

No. 86–222.

District of Columbia Court of Appeals.

Argued Feb. 11, 1988.
Decided Aug. 31, 1988.

Richard S. Stolker, Rockville, Md., appointed by the court, for appellant.

Charles E. Ambrose, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before MACK, NEWMAN, and TERRY, Associate Judges.

deemed by operation of D.C.Code § 11–946 to be in effect from this date.

MACK, Associate Judge:

Mr. Croom appeals his convictions for carnal knowledge, D.C.Code § 22–2801 (1981), and taking indecent liberties with a minor child, D.C.Code § 22–3501(a) (1981 & 1987 Supp.).[1] He contends that the trial court erred in compelling the testimony, at trial, of his spouse, despite her assertion of the marital privilege under D.C.Code § 14–306(a) (1981).[2] Specifically, appellant argues that his wife's "willingness to cooperate with the investigatory function of the grand jury does not imply a willingness to cooperate with the prosecutorial function of a trial [proceeding], and should not be interpreted as a waiver of her right to decline to so cooperate." We affirm.

## I.

Croom lived with his spouse, and his two adopted stepdaughters, A.C.[3] and S.C., at a Northwest address. On the night of April 14, 1984, S.C., finding her younger sister missing from their bedroom and noticing that the light was on in the bathroom, alerted her mother to the fact that A.C. and appellant were in the bathroom together. As Mrs. Croom entered the bathroom, she observed A.C. seated on appellant's lap, facing him with her legs on either side of his, as he sat on the toilet. A.C. was clad in her nightgown; her panties were on the bathroom floor. Mrs. Croom removed her daughter, exposing her husband. Appellant expressed extreme remorse. The following morning, Mrs. Croom informed appellant that he would have to leave their home; however, she permitted appellant some time to "get himself together" and save enough money so that he could move.

Less than six weeks later, in the early morning hours of May 23, 1984, appellant had sexual relations with A.C. in the kitchen of the Croom residence. This was witnessed by S.C. who again noticed the absence of her sister from their bedroom.

However, this time S.C. did not immediately alert her mother; she waited for her sister to return to their bedroom at which time A.C. told S.C.: "[he] did it again." The next morning, S.C. told her mother what had occurred. Mrs. Croom confronted appellant about the incident, and he stated that S.C. and A.C. were liars. He raised his hand to strike S.C., but Mrs. Croom intervened and was struck on the arm. Appellant, challenging Mrs. Croom to take A.C. to the hospital if she did not believe him, followed S.C. into the kitchen, and struck her with his fist. Thereafter, Mrs. Croom took A.C. to the hospital where she was examined by the family doctor. The doctor's examination revealed that A.C.'s internal and external genitals were red, "a 'hyperemic' condition consistent with fondling and manipulation." He notified the police and appellant was later placed under arrest.

On June 18, 1985, prior to the trial date, Mrs. Croom, through retained counsel, filed a document which stated her intention to assert the marital privilege under D.C.Code § 14–306(a). The prosecution filed a "Motion to Compel the Testimony of an Essential Witness" and noted that Mrs. Croom had waived the marital privilege by testifying before the grand jury. On June 28, 1985, a pretrial hearing was held. On July 16, 1985, the trial court granted the prosecution's motion and concluded that Mrs. Croom "made an informed, intelligent and voluntary waiver of the marital privilege for the purpose of these proceedings when she testified before the Grand Jury in this case on May 31, 1984." After a jury trial, appellant was found guilty of carnal knowledge and taking indecent liberties with a minor. *See supra* note 1 and accompanying text. This appeal followed.

## II.

Appellant argues that the trial court erred in finding that Mrs. Croom's decision

---

1. Appellant was charged in a six-count indictment (two counts of carnal knowledge and four counts of taking indecent liberties with a child). He was found guilty on one count of carnal knowledge and one count of taking indecent liberties with a child.

2. D.C.Code § 14–306(a) provides: "In civil and criminal proceedings, a husband or wife is competent but not compellable to testify for or against the other."

3. A.C. was thirteen years of age in April of 1984.

to testify before the grand jury was a waiver of the marital privilege for the purpose of the subsequent trial. We disagree. While none of the cases cited in this court are directly on point, both appellant and appellee call to our attention the cases dealing with the issue of to what extent the Fifth Amendment privilege against self-incrimination is waived by a failure to invoke the privilege before the grand jury. *See Ellis v. United States*, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969); *see also Salim v. United States*, 480 A.2d 710 (D.C.1984). Appellant, however, challenges the rationale of *Ellis* as a "poor analogy" to the case at bar, pointing out the distinction between a witness who is the focal point of criminal charges and a witness who is not. Thus, *Ellis* stands for the proposition that "where a *non-indicted* witness has waived [a] Fifth Amendment privilege by testifying before a grand jury *voluntarily* and *with knowledge of [the] privilege*, [the] waiver extends to *a subsequent trial based on an indictment* returned by the grand jury that heard [the] testimony." *Id.*, 135 U.S.App.D.C. at 49, 416 F.2d at 805 (emphasis added). Appellant, relying on the rationale of *Ellis* that an indicted defendant can suffer no more by repeating at trial what he has already divulged, attempts to place himself in the category of one who can suffer additional detriment, not as a result of incriminating testimony, but because of the spectre of marital discord. Even if there were a constitutional right to be protected against marital discord, however, on this record appellant would not be entitled thereto. Thus, we need not look to caselaw "extending" the waiver from grand jury to trial. Mrs. Croom, a non-indicted witness, not only testified before the grand jury but made an informed, intelligent, and voluntary waiver of the marital privilege. Mrs. Croom was asked:

Q. I have also advised you previously that you may or may not have a marital privilege so that you would not have to testify against your husband, Charlie Croom. Have you been advised regarding that?

A. Yes.

Q. Do you understand the nature of that privilege if there is one?

A. Yes, I do.

Q. Is it your desire to testify before the Grand Jury today?

A. Yes, it is.

Q. *It would be your desire to testify at a trial in the event that there would be one in the future?*

A. *Yes.*

Emphasis added. Thus, Mrs. Croom, without expressing any reservations, affirmed not only that she understood what she was doing but that she wanted to testify before both the grand jury and at any trial. This was an unequivocal waiver, given voluntarily and intelligently. Appellant cannot now claim under D.C.Code § 14–306(a) that his spouse cannot be "compelled" to testify at trial. She has already volunteered the testimony which was central to the subsequent trial.

Appellant, therefore, can find little comfort in the early cases upholding the marital privilege. In *State v. Le Fils*, 209 Or. 666, 307 P.2d 1048 (1957), the Supreme Court of Oregon held that the signing of a complaint by the spouse did not constitute a waiver of her right to invoke the marital privilege. The instant case is markedly different from *Le Fils*. Here, appellant's spouse not only signed a complaint, but voluntarily testified before a grand jury with the knowledge that if there was a subsequent proceeding, she had waived her privilege to assert her right not to testify against her spouse. Indeed, we could agree with the court in *Le Fils* that "there is a difference between the willingness of a spouse to sign a complaint ... and in *being compelled* to be the instrument before a petit jury that leads to conviction of the life-partner." *Id.* at 670–671, 307 P.2d at 1050 (emphasis added). In *State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845 (1950), the Supreme Court of Missouri reversed a trial court that had erroneously concluded that the marital privilege statute did not apply to criminal cases. The court did not specifically address a waiver issue but noted: "[u]nder the statute, we must reluctantly hold that, while Mrs. Dunbar was

*competent* to testify in this case, she could not legally be *required* to do so. One synonym for 'require' is 'compel' . . . ." *Id.* at 792, 230 S.W.2d at 847 (emphasis in original). Here, Mrs. Croom was not "required" or "compelled" to testify—she volunteered, and her competency to testify is undisputed in this case. The trial court properly construed D.C.Code § 14–306(a). And, just as in the cases involving Fifth Amendment waivers, there is no compelling reason in the interest of marital harmony to limit a waiver of that statutory privilege to grand jury proceedings. Indeed, upon a witness spouse's voluntary decision to testify before the grand jury, there is an acknowledgment of marital disharmony, and the privilege cannot be used at a later trial to insulate the accused from the possibility of conviction and imprisonment. The investigatory function of the grand jury would be meaningless if, after a witness has voluntarily testified, the information obtained could not be used in a subsequent proceeding.[4]

AFFIRMED.[5]

---

**4.** We do not reach the applicability of the statutory spousal privilege to crimes against children of the witness spouse (*i.e.,* whether the noncompellability of a spouse to testify should not be applied where there is sexual abuse of the spouse's children). The government, while raising this issue at the motions hearing, does not raise it here on appeal. The dispositive event is the waiver of the marital privilege in the initial grand jury proceeding. However, the trial court's statement, in dicta, is instructive: "[i]t is difficult to conceive how society's interest in a marital relationship tainted by parental sexual abuse of the family's offspring can be considered stronger than its interest in the health and well-being of its children." Implicit in the trial court's reasoning is that while the voluntariness of the waiver is the dispositive issue, the marital privilege cannot be used to preserve

"marital and familial harmony" which does not exist. We recognize, however, that this is a question for the legislature.

**5.** We do not address at length appellant's contention that the trial court erred in admitting testimony from Mrs. Croom and S.C. about his assaultive and threatening conduct on the morning after the commission of the second crime against A.C. It will suffice to say that this testimony falls within a limited class of evidence which is not "other crimes evidence" (*see Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964)) "because it is too intimately entangled with the charged criminal conduct." *Toliver v. United States,* 468 A.2d 958, 960 (D.C. 1983). We find no abuse of discretion.