Filed 9/25/24 Certified for Partial Pub. 10/23/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B330062 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA320049) |
| v. | |
| FILIBERTO OCOBACHI, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Reversed and remanded.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

Jeffrey F. Rosen, District Attorney (Santa Clara), and Alexandra W. Gadeberg, Deputy District Attorney, for the

County of Santa Clara as Amicus Curiae on behalf of Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant and appellant Filiberto Ocobachi, Jr. (defendant), appeals from the order denying his petition for vacatur of his manslaughter conviction and for resentencing pursuant to Penal Code section 1172.6, entered after an evidentiary hearing.[1]  Defendant contends the trial court erred in admitting the transcript of grand jury proceedings into evidence and the ruling was not supported by substantial evidence. Defendant also contends the trial court failed to appropriately apply the elements of direct aiding and abetting implied malice murder.  Defendant requests any remand include an order to transfer to juvenile court for resentencing.  The People concede the trial court's reliance on the grand jury transcript was error, but claim the order was nevertheless supported by substantial evidence and that the court properly applied the appropriate elements.[2]

We conclude the grand jury transcripts were inadmissible, and the remaining evidence presented was insufficient to support the order.  We thus reverse the order and remand for a new evidentiary hearing pursuant to section 1172.6, subdivision

---

[1]     All further unattributed code sections are to the Penal Code unless otherwise stated.

[2]     We allowed the Santa Clara County District Attorney to file an amicus curiae brief and to participate in oral argument regarding the admissibility of grand jury transcripts.

2

(d)(3). As we remand the matter for a new evidentiary hearing, we find it premature at this time to address defendant's petition to transfer this matter to juvenile court.

## BACKGROUND

### 2007 conviction

In 2006 defendant and five codefendants were accused of murder based on a shooting during a fight in a pool hall. All were indicted for murder, and codefendant Joseph Bonilla was alleged to have personally and intentionally discharged a firearm, proximately causing great bodily injury and death to the victim, Alfredo Briano. Defendant and the other four codefendants were not accused of firing the gun. The indictment alleged pursuant to section 182.22, subdivision (b)(1) that count 1 was committed to benefit a gang, and pursuant to section 12022, subdivisions (d) and (e)(1) that a principal used a firearm in the commission of the crime.

In 2007, defendant and his codefendants (except Joseph Bonilla)[3] entered into a plea agreement to an amended indictment and each pled no contest to voluntary manslaughter in violation of section 192, subdivision (a) (count 1) and an added count, assault by means of force likely to produce great bodily injury in violation of section 245, former subdivision (a)(1)[4] (count 2). In addition, they each admitted the gang allegation and the allegation that a principal used a firearm in the commission of

---

[3] The codefendants entering a plea along with defendant were Guillermo Huerta, Erik Perez, Rudy Fernandez, and Oscar Bonilla.

[4] See now section 245, subdivision (a)(4); Statutes 2011, chapter 183, section 1.

3

the crime.  Defendant and codefendants agreed, and counsel stipulated to a factual basis for the plea consisting of statements in "the police reports and the indictment hearing," that each was "involved in an assault that resulted in the death of Alfredo Briano," and that none of these defendants was the shooter. Defendant was sentenced to 18 years in prison.

**Petition for resentencing**

In February 2022, defendant filed a petition for vacatur of his manslaughter conviction and for resentencing pursuant to section 1172.6.  Section 1172.6 provides a procedure to petition for retroactive vacatur and resentencing for those who could not be convicted of murder under sections 188 and 189 as amended effective January 1, 2019.  (See *People v. Lewis* (2021) 11 Cal.5th 952, 957.)  Sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, were amended "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  Effective January 1, 2022, the resentencing procedure was extended to those convicted of manslaughter.  (Stats. 2021, ch. 551, § 2; see § 1172.6, subd. (a).)

Defendant's petition alleged the three section 1172.6, subdivision (a) conditions.[5]  Once a petitioner makes a prima

---

[5]     As relevant here, those conditions are as follows: an indictment was filed against him that "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that

4

facie showing of eligibility for relief, an evidentiary hearing is held pursuant to section 1172.6, subdivision (d), "at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (*Ibid*.) 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' (*Ibid*.)" (*People v. Strong* (2022) 13 Cal.5th 698, 709.)

Here, the prosecution filed a response to the petition and did not oppose the issuance of an order to show cause. The trial court appointed counsel for defendant, the parties filed briefs, and the evidentiary hearing was held April 21, 2023. (See § 1172.6, subds. (c) & (d).)

**Evidence presented at hearing**

*Prosecution evidence*

The trial court announced its ruling was based on all the evidence before the court, including the transcript of the grand jury testimony, a video shown to the grand jury, and the plea and

---

person's participation in a crime"; he was convicted of "manslaughter [after he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder"; and, he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

sentencing transcripts.  Defendant objected to the inclusion of the grand jury testimony in his hearing brief and again at the evidentiary hearing.  The objection was overruled.[6]

The grand jury testimony transcript included narration of the video by Detective Joseph Martinez, an investigating officer in the case.  The video contains no audio and shows different clips of the pool hall incident, with some clips showing the same action from different camera angles.  The transcript includes Detective Martinez's explanation of the action.

The video essentially shows a group of young men and women entering the pool hall, and during the next approximately four minutes a fight breaks out between them and another group of people.  At 4:35 to 4:39 minutes into the video, a person in a white T-shirt is seen going from the left side of the screen to the right, carrying a pool stick and then striking another person with it once, apparently causing the person to fall to the floor.  At 5:07 a person in a patterned shirt is seen striking someone on the floor several times with a pool stick.  Between 5:34 and 5:46 people are seen leaving the area, appearing to duck behind pool tables momentarily and then get up and start walking around.  Between 6:07 and 6:20 a highlighted person comes into view behind two men in white T-shirts, reaches for his waistband, pulls out a gun and points it at a person out of view.  The gunman then goes in the direction of the pointed gun, until he is almost out of view with his back to camera, turns back, puts the gun down to his

---

[6]     The People concede the trial court erred in admitting the grand jury testimony.  We therefore do not summarize it in depth, but refer to it as necessary to the parties' arguments.

Defendant also successfully objected to the admission of testimony from codefendant's trial.

side, and faces a person in dark shirt.  Between 6:20 and 6:23 the highlighted person runs to the middle of the aisle between pool tables holding the gun with two hands close to the middle of his abdomen, with one hand on the top, and then runs away.

At the hearing, over defense objection, defendant identified the interior of the pool hall at about two minutes into the video and testified it appeared to be the area where the incident took place.  At four minutes, 36 seconds, defendant identified himself wearing a white T-shirt and blue jeans, holding a pool stick and testified the video showed what happened that night.  The parties stipulated that the highlighted person in the video was not defendant.

On cross-examination defendant denied he had seen anyone holding a gun or that he knew who had fired it at the time he heard a gunshot.  Defendant testified he had been in the bathroom when the fight broke out and came out to see two people attacking his cousin, but did not know how it started.  His cousin was not the shooter, and defendant did not know who was.

On redirect examination, defendant ultimately acknowledged he told the parole board he was gang-affiliated, explaining he was referring to his gang affiliation while he was in prison.

Defendant later explained that when he spoke of his family life to the parole board he was explaining the time before prison when he associated with his cousin and others, some of whom he knew were gang members and some he did not know were gang members.  It was in prison that defendant formally became a member of a gang.

7

### *Defense evidence*

Dr. Francesca Lehman, a clinical and forensic psychologist, and an expert in child and adolescent development and the impact of trauma over their lifespan, testified that defendant was 17 years old at the time of the shooting, at a stage of adolescence when an adolescent's ability to appreciate risks and consequences are not fully developed, which is "particularly important to consider when it's a heated situation, what is sometimes called a hot cognition, a time when emotions are high." Dr. Lehman explained research has demonstrated that this phenomenon is enhanced in the presence of peers causing adolescents to act more on impulse and emotion and unable to weigh the risk and benefits of their behavior, adding stress and trauma can further impact the development process. Dr. Lehman identified a number of increased risk factors for slower brain development in defendant's records, including exposure to domestic violence, parental separation, and drug abuse.

**The ruling**

After hearing the testimony and counsel's arguments, the trial court denied the petition. The court explained it found defendant's no contest plea, and particularly defendant's agreement to the factual basis, to be an admission to having been an aider and abettor to murder.

The trial court did not believe any of defendant's testimony or statements made to the investigating officer as recounted in the grand jury hearing and suggested that it was unnecessary for defendant to have known the perpetrator intended to shoot the victim.

The court concluded: "I find based upon the totality of the evidence I have before me, including the grand jury transcript

8

and the plea transcript, which nobody addressed, that the People have proved beyond a reasonable doubt that the petitioner in this matter is guilty of aiding and abetting implied malice murder."

Defendant filed a timely notice of appeal from the order denying the petition.

## DISCUSSION

### I.  Grand jury transcript

The trial court based some of its factual findings on the transcript of the grand jury proceedings.  Defendant contends the trial court erred in considering the grand jury transcript as it was not admissible evidence under the provisions of section 1172.6, subdivision (d)(3).  The People concede the trial court erred in admitting the grand jury testimony, resulting in this issue being no longer in controversy.

Section 1172.6, subdivision (d)(3) identifies what evidence may be admitted in the hearing.

As relevant here Evidence Code 1291, subdivision (a) provides that "former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant . . . ."

Amicus curiae argues that a grand jury transcript is admissible under the plain language of section 1172.6, subdivision (d)(3) to the same extent as a preliminary hearing transcript.  Amicus curiae relies on *People v. Davenport* (2023) 95 Cal.App.5th 1150 (*Davenport*), which considered the admissibility of the petitioner's preliminary hearing transcript, and *People v.*

9

*Cody* (2023) 92 Cal.App.5th 87 (*Cody*), which considered testimony from the trial that led to the petitioner's conviction. Both cases find a hearsay exception in the language of section 1172.6, subdivision (d)(3) to Evidence Code section 1291, subdivision (a), which requires showing that a witness is unavailable before admitting former testimony against a *party* to a former proceeding. (*Davenport, supra*, at p. 1158; *Cody, supra*, at pp. 103-104.)

Amicus curiae would have us find an exception in the language of section 1172.6, subdivision (d)(3) not only to the witness unavailability prerequisite of Evidence Code section 1291, subdivision (a), but also to the requirement of subdivision (a)(2) of section 1291 that "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant . . . ."

Here, defendant was not a party to the grand jury proceeding. A grand jury proceeding is an investigation. (See § 923.) "[T]he grand jury serves as part of *the charging process* of criminal procedure, not *the adjudicative process* that is the province of the courts or trial jury." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026.) The person investigated is not a party but a grand jury "target." (See, e.g., *United States v. Washington* (1977) 431 U.S. 181, 189; *People v. Petrilli* (2014) 226 Cal.App.4th 814, 823.) And "the person under investigation by a grand jury has no right to appear or offer evidence." (*People v. Brown* (1999) 75 Cal.App.4th 916, 932.)

Citing *People v. Silva* (2021) 72 Cal.App.5th 505, 520, and *People v. James* (2021) 63 Cal.App.5th 604, 606, amicus curiae argues that because a section 1172.6 evidentiary hearing is a

statutory act of lenity, a petitioner does not enjoy rights under the Sixth Amendment to the United States Constitution, and thus does not have a *constitutional* right to confrontation in a section 1172.6 evidentiary hearing. Amicus curiae then expands this argument to conclude that section 1172.6, subdivision (d)(3) permits the admission of prior testimony given in a proceeding to which the petitioner was not a party and had no right to cross-examine witnesses against him.

Amicus curiae cites *Davenport, supra*, 95 Cal.App.5th at page 1160 to support its suggestion that a petitioner can always simply subpoena grand jury witnesses to be examined in the section 1172.6 hearing. *Davenport* is an inapt comparison, as it involved a preliminary hearing, at which the petitioner had at least the right and *opportunity* to cross-examine witnesses, and the complaint rejected there was that cross-examination at preliminary hearing had not been conducted with the same "'motive and interest.'" (*Davenport*, at p. 1160.) Amicus curiae has cited no authority directly on the point at issue here, but asks we address this question anyway, as a matter of first impression under the Sixth Amendment and the due process clause of the United States Constitution. "'"Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered [citations].'"'" (*Younger v. State of California* (1982) 137 Cal.App.3d 806, 813-814.) "It is settled that 'the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"

11

(*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132.) "The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court." (*People ex rel. Lynch v. Superior Court* (1970) 1 Cal.3d 910, 912.) Moreover, "'we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.'" (*Facebook, Inc. v. Superior Court* (*Hunter*) (2018) 4 Cal.5th 1245, 1275, fn. 31.) We thus decline the request by amicus curiae to carve out a new exception to Evidence Code section 1291.

## II.    Aiding and abetting implied malice murder

Defendant contends there was insufficient evidence to support the trial court's finding defendant was guilty of implied malice murder as an aider and abettor. Defendant also contends the trial court misapprehended what is required to prove aiding and abetting implied malice murder, as demonstrated by the court's holding that "it is sufficient that defendant know he was aiding in a violent attack."

Defendant asks that we review the sufficiency of the evidence to support the elements of aiding and abetting implied malice through "the lens" of *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), decided after the evidentiary hearing here, where our Supreme Court explained, "Murder is committed with implied malice when 'the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"' [Citation.] "'To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.'"' (*Id.* at p. 988.)

12

"'[N]otwithstanding [the] elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*Reyes, supra*, 14 Cal.5th at p. 990, quoting *People v. Gentile* (2020) 10 Cal.5th 830, 850.) " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes*, *supra*, at pp. 990-991.)

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."" [Citation.] But where there is an issue as to whether the trial

13

court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*Reyes, supra*, 14 Cal.5th at p. 988.)

The trial court found defendant's mens rea was sufficient for implied malice so long as defendant knew he was aiding a violent attack and intended to help the perpetrators by stopping the victim from escaping or defending himself. The court found a sufficient physical act in the factual basis admitted by defendant, "that he was involved in, an assault that resulted in the death," as well as in the plea itself. The court did not elaborate. We note that in defendant's plea of no contest to committing an assault likely to cause great bodily injury in violation of section 245, former subdivision (a)(1), he agreed to a factual basis that he was "*involved* in an assault that resulted in . . . death." (Italics added.) Defendant did not specifically admit to aiding and abetting an assault with a firearm or assault with a deadly weapon or instrument as the abstract of judgment erroneously states.[7]

The trial court found it sufficient that defendant knew he was aiding in a violent attack, in part by drawing a comparison to the facts in *People v. Schell* (2022) 84 Cal.App.5th 437 (*Schell*). The trial court claimed that *Schell* "held the defendant need not

---

[7] At the time of defendant's plea, section 245, former subdivision (a)(1) read, "Any person who commits an assault upon the person of another with a deadly weapon or instrument *other than a firearm* or by any means of force likely to produce great bodily injury shall be punished by imprisonment . . . ." (Stats. 2004, ch. 494, § 1, italics added.) Now, assault by means of force likely to produce great bodily injury is found in subdivision (a)(4), separate from assault with a deadly weapon other than a firearm, which remains in subdivision (a)(1).

14

know that someone would strike the victim with a shovel on the back [to] be liable under an implied malice theory." In *Schell*, the defendant was one of at least eight gang members motivated by perceived disrespect who attacked a lone victim and beat him to death. (*Id.* at p. 440.) There, the defendant used his fists and feet, one cohort used a baseball bat, another used a shovel, and one of them stabbed the victim three times during the beating. (*Ibid.*) During the attack, the blows to the head were loud enough to be heard by neighbors and someone was heard yelling, "'Stop it' and '[y]ou're killing him.'" (*Id.* at p. 443.) While the *Schell* court found the defendant did not need to *specifically* know that someone would strike the victim with a shovel in a *particular* manner to be liable under an implied malice theory, the court did not hold it was sufficient to merely know he was aiding in a violent attack. The *Schell* court stated: "'It suffices that he knew he was aiding in a violent attack, *knew dangerous weapons were being used* against [the victim], and intended to stop [the victim] from escaping or defending himself by helping the perpetrators to surround and hit him.'" (*Schell, supra*, 84 Cal.App.5th at p. 443, italics added.)[8]

---

[8]    The People agree with the trial court that *Schell*'s facts are comparable because there were five other gang members involved in the fight at the pool hall, and they claim all of them were assaulting Briano. We have observed the video and have seen two groups fighting each other, not five gang members all assaulting Briano. Here, unlike in *Schell*, the gun and a pool stick were initially the sole weapons used. The gun was not exposed during the fight. It seems to have first been exposed and used within seconds, not long enough for anyone to say "stop, you're killing him" or perhaps even to see it until it was fired.

15

The People argue substantial evidence supports the finding defendant was guilty of aiding and abetting implied malice murder, and the facts of *Reyes* provide an inapt comparison because the evidence of defendant's guilt is stronger than the evidence against the defendant in *Reyes*. The People agree with the trial court's conclusion the factual basis for defendant's plea, having been "involved in an assault that resulted in the death of Alfredo Briano," was a personal admission of guilt. Noting that defendant did not contest the fact that he participated in the fight in which another person shot and killed the victim, the People conclude the only issue to be proven at the hearing on the petition was whether the prosecution had proven beyond a reasonable doubt that defendant had aided and abetted the shooting with the requisite mens rea. They argue the video of the incident, which was admitted evidence at the hearing, established defendant had the requisite mental state, claiming that simply viewing the video without narration provides sufficient evidence along with the factual basis. Their analysis, however, of the video includes their own explanation of the action without citation to the detective's narration or any evidence outside the transcript.

The People's explanation appears to be the shooter attempted to fire his weapon twice while defendant *simultaneously* approached the victim with the pool stick and struck the victim twice with the pool stick *during* both attempts. In sum, referring to the few seconds during which defendant was approaching and then, according to the People, simultaneously hitting the victim as the shooter was firing toward the victim, the People infer that defendant saw the weapon in the shooter's

16

hand, saw the victim wounded, and at that moment acquired the intent to aid and abet the shooting.

It is possible. An aider and abettor can form an intent to facilitate a crime during its commission. (See *People v. Montoya* (1994) 7 Cal.4th 1027, 1039 ["the defendant's intent to encourage or facilitate the actions of the perpetrator 'must be formed *prior to or during* "commission" of that offense'"].) In this case however, it may require a knowledgeable explanation of the sequence and timing of the events in the video to reasonably draw such an inference. This raises the question of whether or not that is possible without the inadmissible grand jury evidence in light of *Reyes*.

Without the grand jury evidence, we are left with the factual basis for defendant's plea that he was "involved in an assault that resulted in the death of Alfredo Briano," but he was not the shooter, and defendant's testimony that he participated in the fight and was seen in the video striking someone with a pool stick. Thus, the appropriate path is to remand for a new evidentiary hearing in which the prosecution must prove beyond a reasonable doubt pursuant to section 1172.6, subdivision (d)(3) that defendant is guilty of murder under the murder laws as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.). (See *Reyes, supra*, 14 Cal.5th at p. 992.) We express no view on the merits of defendant's resentencing petition based upon admissible evidence and proper application of the elements of direct aiding and abetting.

III. **Request for transfer to juvenile court**

We do not reach defendant's claim the trial court failed to consider defendant's age (17 years) and maturity in deciding whether the prosecution had met its burden to prove that he

17

could be convicted of implied malice murder under current law. (See generally, *People v. Pittman* (2023) 96 Cal.App.5th 400, 416-418 [youth is a factor relevant to the requisite mental state].)

At the time of the crime defendant was 17 years old and prosecuted in adult court. Citing *People v. Padilla* (2022) 13 Cal.5th 152, 166-167, defendant contends that if the order denying the petition is reversed with directions to grant the petition due to insufficient evidence, the matter should be remanded to the juvenile court pursuant to Proposition 57 (approved by voters, Gen. Elec. (Nov. 8, 2016)). Defendant acknowledges he must first prevail under his section 1172.6 petition to be entitled to a transfer to juvenile court. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996-998, 1000.) As we remand for a new evidentiary hearing, it would be premature to reach this issue now.

## DISPOSITION

The order is reversed, and the matter remanded for a new evidentiary hearing pursuant to section 1172.6, subdivision (d)(3) in accordance with the views expressed in this opinion.

_____
CHAVEZ, J.

We concur:


_____     _____
ASHMANN-GERST, Acting P. J.     HOFFSTADT, J.

18

Filed 10/23/24

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FILIBERTO OCOBACHI, JR.,<br><br>    Defendant and Appellant. | B330062<br><br>(Los Angeles County<br>Super. Ct. No. BA320049)<br><br>ORDER CERTIFYING<br>OPINION FOR PARTIAL<br>PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on September 25, 2024, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion

---

\*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II and III of the DISCUSSION.

should be partially published in the Official Reports, and it is so ordered.

_____
ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

2